SHELLBURNE, INC., a corporation of the State of Delaware,
Plaintiff,

*vs.*

HARRY B. ROBERTS, JR., *et al.*,
Defendants.

*Supreme Court, On Appeal, November 9, 1966.*

*Donald W. Booker*, Wilmington, for plaintiff.

*Clarence W. Taylor* and *Harvey B. Rubenstein*, Wilmington, for defendants.

WOLCOTT, Chief Justice, CAREY and HERRMANN, JJ., siting.

HERRMANN, Justice: This is a proceeding on certification under Rule 20 of this Court, *Del.C.Ann.* Certification was accepted for the reason that the questions of law certified relate to the constitutionality, construction and application of a Statute of this State which has not been, but which should be, settled by this court.[1]

The certification arises from an action for injunctive and other relief by the owner of a parcel of land in New Castle County seeking to prevent the Zoning Commission and the Levy Court of New Castle County from considering, on the Levy Court's initiative, a proposed change in zoning of the parcel from a commercial to a residential classification.

The stated facts under which the questions are certified are these:

The parcel involved, consisting of 3.78 acres of unimproved land, adjoins residential developments known as Shellburne, Welshire and Liftwood. With the exception of the instant parcel, which is presently zoned commercial, all property located in the immediate vicinity of the

1. The substance of the Statute involved, 9 *Del.C.* § 2611, will remain in force and effect, notwithstanding transfer of the legislative functions of the Levy Court to a new County Council in the forthcoming reorganization of the government of New Castle County. See 9 *Del.C. Ch.* 11.

parcel is zoned residential. On January 11, 1966, by resolution unanimously adopted, the Levy Court requested the Zoning Commission to hold a public hearing and to make a recommendation upon the matter of the rezoning of the parcel from commercial to residential. The property owner brought an action in Chancery Court to enjoin the Zoning Commission and the Levy Court from considering any change in zoning. The Chancery Court granted a preliminary injunction enjoining the defendants from further action upon the resolution on the condition that the plaintiff withhold further work[2] on the parcel until further order of the Court. This certification followed.

The questions certified are:

"1. May the Levy Court of New Castle County under 9 *Delaware Code* § 2611 initiate a change in the zoning of land, by requesting the Zoning Commission to hold a public hearing and make a recommendation to the Levy Court upon the proposed change in the absence of any application for such change by the legal or equitable owner of the land?

"2. May the Levy Court of New Castle County upon its own initiative rezone unimproved land in Brandywine Hundred outside of incorporated municipalities from the classification designated as a part of the original zoning of Brandywine Hundred where the ownership of the land has not changed since the original zoning, the owner of the land has obtained a permit for a planned use permitted under the present classification but forbidden by the proposed classification, and the value of the land under the proposed classification would be substantially less than its value under present classification?"

### I.

■ The plaintiff property owner contends that the Levy Court may not initiate a zoning change; that the change must be initiated by the property owner. We are unable to agree.

---

2. It appears from this and from the text of Question No. 2 that reference should have been made in the stated facts to the issuance of a valid building permit, for construction of commercial structures on the parcel, on December 22, 1965, and the suspension of the permit on January 11, 1966, upon the direction of one member of the Levy Court. These facts appear in the plaintiff's brief and stand undisputed.

The power of the Levy Court to make zoning changes stems from 9 *Del.C.* § 2611. That Statute grants the power and prescribes certain procedural requirements—but it is silent as to who must initiate a zoning change.[3] We think that necessarily implicit in the grant of power to the Levy Court to make zoning changes is the power to initiate such change. This conclusion is impelled by both reason and authority.

■ It would be unreasonable, in our opinion, to assume that the General Assembly intended to restrict the Levy Court, in the exercise of the legislative powers vested in it by § 2611, to zoning changes emanating from property owners only. In the absence of an express prohibition, a legislative body must be deemed to have the inherent freedom to initiate such action, within the scope of its jurisdiction, as it considers necessary and proper. It is generally recognized that zoning regulations should be progressive, not static; that they should be sufficiently flexible to adjust to changed conditions in the interest of the public welfare. We think it unreasonable to assume that the General Assembly intended that such adjustments shall depend for their origination upon the wishes of persons outside the governing body to which the power and the responsibility have been granted.

The authorities support this view: In 1 *Antieau, Municipal Corporation Law* 474, it is stated:

---

3. 9 *Del.C.* § 2611 provides in part:

"§ 2611. Changes in zoning district, plan or regulations; procedure

"(*a*) The Levy Court may, from time to time, make amendments, supplements, changes or modifications (herein called 'changes') with respect to the number, shape, boundary or area of any district or districts, or any regulation of, or within, such district or districts, or any other provision of any zoning regulation or regulations, but no such changes shall be made or become effective until the same shall have been proposed by or be first submitted to the Zoning Commission.

* * *

"(*c*) Unless the Zoning Commission shall have transmitted its report upon the proposed changes within 15 days after the submission thereof to it, the Levy Court shall be free to proceed to the adoption of the changes without further awaiting the receipt of the report of the Zoning Commission. In any event, the Levy Court shall not be bound by the report of the Zoning Commission. Before finally adopting any such changes, the Levy Court shall hold a public hearing thereon, at least 15 days' notice of the time and place of which shall be given by at least one publication in a newspaper of general circulation in the county."

"Amendments to zoning ordinances can usually be suggested by the governing body of its own volition and, in most jurisdictions, by petition of the affected property owners."

See also *Rathkopf, The Law of Zoning and Planning,* 27-28.

■ The plaintiff cites no authority in support of its position on this point. The crux of its argument in this connection is that there is possibility of abuse by the Levy Court if it, as well as the property owner, has the initiative in rezoning. Underlying this argument is the apprehension that whim, not reason, too often would be the basis for rezoning initiated by the Levy Court. The overriding answer to this argument is twofold: first, possible abuse of power is not a valid argument against its existence; and second, the argument is based on the assumption of improper action by public officials—a premise we decline to accept. The standards of due process applicable to rezoning upon the petition of a property owner remain applicable to rezoning upon the Levy Court's initiative; the discretion residing in the Levy Court, acting in its legislative capacity, remains the same in both instances; and the same judicial review for rectification of arbitrary and capricious action remains available, whether the change is made by the Levy Court on its own initiative or on the initiative of a property owner.

■ The plaintiff argues, in the alternative, that any power of the Levy Court may have to initiate zoning changes, is limited to the amendment of general enactments or regulations, citing *Orr v. Hapeville Realty Investment, Inc.,* 211 *Ga.* 235, 85 *S.E.2d* 20 (1954). We find in § 2611 no justification for any such limitation.

■ A constitutional question is also presented by the plaintiff. It is argued that, if construed to grant the power to initiate zoning changes as to individual parcels, § 2611 violates due process, and is unconstitutional delegation of legislative power, because it fails to furnish sufficient standards or guidelines to control such action. The plaintiff cites *Woodlawn Area Cit. Association v. Board of County Com'rs,* 241 *Md.* 187, 216 *A.2d* 149 (1966); *Osius v. City of St. Clair Shores,* 344 *Mich.* 693, 75 *N.W.2d* 25, 58 *A.L.R.2d* 1079 (1956); *Andrews v. Board of Supervisors of Londoun County,* 200 *Va.* 637, 107 *S.E.2d* 445 (1959). The fallacy of this argument lies

in its assumption that § 2611 stands alone. That Statute is part of the general Enabling Act governing zoning of New Castle County. See 9 *Del.C. Ch.* 26. Read in context with all other pertinent parts of the Statute, we are satisfied that § 2611 meets the constitutional requirements to which the plaintiff points.

Accordingly, the answer to Question No. 1 is in the affirmative.

## II.

Question No. 2 inquires, in effect, whether the answer to Question No. 1 remains the same if (1) the ownership of the land has not changed since the original zoning; (2) the owner of the land has obtained a building permit for a use permitted under the present classification but forbidden by the proposed classification; and (3) the value of the land under the proposed classification would be substantially less than its value under the present classification.

Our answer to the first Question is not changed by these factors. The plaintiff concedes that a property owner has no vested right in a zoning classification. This rule is not changed by financial detriment. Individual financial loss, while proper for consideration, is not controlling in the zoning exercise of the police power. *E. g., Geneva Inc. Co. v. City of St. Louis, Mo.* (8 *Cir.,* 1937) 87 *F.2d* 83. It is settled, too, that the mere issuance of a building permit for a particular use does not create a vested right in a particular zoning classification. See *State ex rel. Conly v. Klingmeyer,* 1 *Storey* 203, 141 *A.2d* 451 (1957).

Therefore, none of the factors mentioned would nullify the power of the Levy Court to initiate a zoning change. On the face of the matter, this would seem to be the answer to Question No. 2. There is an underlying question, however, which the parties deem implicit in the Question certified: What is the effect of a future zoning change upon an existing building permit?

Under certain circumstances, the law recognizes a vested right to construct and use under a valid building permit issued prior to a zoning change which would otherwise prohibit such construction and usage. The basis for the rule is the same as that underlying 9 *Del.C.*

§ 2620[4] and Article XVII, Section 1 of the Zoning Code of New Castle County[5] which prevent zoning changes from being retroactively applied to nonconforming uses and structures.

■ It is generally recognized that the issuance of a building permit does not, alone, confer any right against a later zoning change. Otherwise stated, a permit is not *per se* protected against a zoning change subsequently adopted. The acquisition of vested rights requires more. · As of the time of the zoning change, there must have been a substantial change of position, expenditures, or incurrence of obligations, made lawfully and in good faith under the permit, before the land owner becomes entitled to complete thé construction and to use the premises for a purpose prohibited by a subsequent zoning change. This is the rule supported by a great majority of the cases. See 2 *Rathkopf, The Law of Zoning and Planning,* p. 57-6; 8 *Mc-Quillin, Municipal Corporations* (1965 *Rev.*) §§ 25.156 and 25.157.

The plaintiff urges upon us the minority rule that the issuance of a permit, *per se,* vests the right to build and use property in conformity with it regardless of subsequent zoning changes. See 2 *Rathkopf, The Law of Zoning and Planning,* p. 57-4. This rule has been

---

4. 9 *Del.C.* § 2620 provides:

"§ 2620. Nonconforming uses of land or buildings

"(*a*) The lawful use of a building or structure, or the lawful use of any land, as existing and lawful at the time of the enactment of a zoning regulation, or in the case of a change of regulations, then at the time of such change, may, except as hereinafter provided, be continued although such use does not conform with the provisions of such regulations or change, and such use may be extended throughout the same building, provided no structural alteration of such building is proposed or made for the purpose of such extension. The Levy Court in any zoning regulations may permit the restoration, reconstruction, extension or substitution of nonconforming uses upon such terms and conditions as may be set forth in the zoning regulations."

5. Article XVII, Section 1 of the Zoning Code of New Castle County provides:

"Nothing in this Code shall require any change in the plans, construction, or designated use of any building or part thereof, the construction of which shall be lawfully in progress at the time of passage of this Code, or for which a permit shall have been issued pursuant to law, provided construction shall be promptly and diligently prosecuted."

adopted in a few states on the ground of certainty. *E. g., Hull v. Hunt,* 53 *Wash.2d* 125, 331 *P.2d* 856 (1958). While certainty in the law is desirable, we decline to adopt the minority rule because the advantages of certainty are not sufficient, in our opinion, to counterbalance the fundamental, time-tested principles of estoppel upon which the majority rule is based. Moreover, the majority rule is more consistent with the policy, expressed in Article XVII of the Zoning Code, that construction under a permit, issued at the time of the passage of the Code, must have been "promptly and diligently prosecuted" for the preservation of the right to a nonconforming use.

The application in the instant case of the rule we here endorse depends upon facts, future as well as past. Hence, the application of the rule is not within the scope of this certification.

With these observations, the answer to Question No. 2 is in the affirmative.