SHELLBURNE, INC., a corporation of the State of Delaware,
Plaintiff Below,
Appellant,

*vs.*

HARRY B. ROBERTS, JR., et al., Defendants Below,
Appellees.

*Supreme Court, On Appeal, December 14, 1967.*
*Upon Petition for Special Mandate, January 18, 1968.*

488

*Donald W. Booker,* of Booker, Leshem, Green & Shaffer, Wilmington, for plaintiff below, appellant.

*Harvey B. Rubenstein* and *Clarence W. Taylor,* Wilmington, for defendants below, appellees.

WOLCOTT, C. J. and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice: This appeal arises in an action for injunctive relief and for money damages brought by the plaintiff, Shellburne, Inc., a Delaware corporation (hereinafter "Shellburne") against the defendants, the Levy Court of New Castle County, its members individually, the Building Inspector, the Zoning Commission of New Castle County, and others. The suit involves attempts to rezone certain lands owned by Shellburne in New Castle County, presently zoned commercial, located near the residential developments known as Shellburne, Welshire, and Liftwood.

The following determinative facts are undisputed: On December 22, 1965, a building permit was issued to Shellburne for the construc-

tion of a commercial building on the land here involved. The parcel had been zoned commercial since 1954. Earlier attempts by Shellburne to begin construction had been delayed, particularly during 1964 and 1965, by unsuccessful attempts of the owners of nearby properties to initiate the rezoning of the subject tract. The last such attempt culminated in an Order of the Chancery Court in Shellburne's favor on December 22, 1965.

On January 11, 1966, the three Commissioners of the Levy Court adopted a Resolution requesting the Zoning Commission "to hold a Public Hearing and to make its recommendation to the Levy Court upon the matter of the rezoning" of the subject parcel of land "from C-1 to R-1-C classification."[1] On the same date, the Building Inspector received a letter from the defendant Joseph F. Dayton, one of the Levy Court Commissioners, directing the Building Inspector to stop all work on the subject tract under the outstanding building permit. Such order was issued to Shellburne by the Building Inspector forthwith. Neither of the other Levy Court Commissioners, the defendants John D. Daniello and Harry B. Roberts, Jr., had prior knowledge of the instructions issued by Dayton to the Building Inspector. This action followed.

In its complaint, Shellburne alleged *inter alia* that the "principal source of agitation over the last two years" for the rezoning was a Church located across from the parcel in question; that Daniello was a member of the Church involved; that Dayton was a member of the same faith although of a different parish. By this suit, Shellburne sought (1) to restrain the Levy Court and the Zoning Commission from "entertaining any petition for rezoning" the subject land "from its present classification of C-1 to R-1-C and/or from conducting any proceedings concerning such rezoning"; (2) to restrain the Building Inspector "from stopping any work under the valid and legal existing building permit or from refusing to issue any additional permits where proper regulations and requirements are fulfilled"; (3) to restrain the Levy Court and all defendants "from interfering in any way with the orderly, proper, and normal issuance of building permits or the work under the present permits"; and (4) to recover damages from "individuals where their office has been wrongfully used."

1. The C-1 zoning classification covered "neighborhood shopping" districts. The R-1-C zoning classification covered "one-family residential" districts.

By its Order dated February 23, 1966, the Chancery Court decreed:

"* * * until final determination of this action that the Defendants, their agents, employees and successors, are hereby enjoined from holding zoning hearings or in any way acting upon the resolution of the Levy Court dated January 11, 1966 * * * and that the Defendants, their agents, employees and successors are hereby further enjoined from interfering in any way with the work under the existing Building Permit No. 37313, or from revoking or attempting to revoke the present permit; provided that this temporary injunction order shall only issue on condition that plaintiff agree not to perform any further work at the scene until final determination of this action."

In due course, certain questions were certified to this Court regarding the power of the Levy Court to initiate zoning changes. We held that such power existed. See *Shellburne, Inc. v. Roberts, Del.,* 224 *A.2d* 250 (1966). Thereafter, by Order dated December 28, 1966, the Chancery Court granted summary judgment in favor of the defendants Dayton and Daniello absolving them from personal liability for damages arising from the Resolution of January 11, 1966 or from the stoppage of work by the Building Inspector. Shellburne appeals from that Order.

Subsequently, on January 3, 1967, as the result of the New Castle County Reorganization Act, 9 *Del.C.* Chap. 11, the newly-elected County Council of New Castle County replaced the dissolved Levy Court. At the first business meeting of the Council held January 9, 1967, Ordinance No. 67-2 was introduced providing for the rezoning of the subject property from C-1 to R-1-C classification. At the same meeting, Ordinance No. 67-3 was introduced providing that no building permit shall issue as to any land with respect to which a rezoning ordinance has been introduced, until adoption or rejection of the ordinance, or the expiration of 90 days from the date of introduction of the ordinance, whichever first occurs. Ordinance No. 67-3 was approved at the Council meeting of January 25, 1967. At the Council meeting of January 30, 1967, Ordinance No. 67-2 was withdrawn, for some reason unexplained in this record, and an identical ordinance, being No. 67-5, was introduced which would rezone the subject parcel. The latter ordinance remains pending.

Thereafter Shellburne moved for a contempt attachment against the members of the County Council, asserting violation of the Chancery Court's injunctive order of February 23, 1966. That motion was denied by Order dated March 1, 1967 and Shellburne appeals.

Shellburne also moved for leave to join the members of the County Council as parties defendant in this action and to amend the complaint to include the activities of the Council in the premises. That motion was denied by Order dated March 1, 1967 and Shellburne appeals.

Finally, the defendants moved to dismiss the action. That motion was granted by Order dated March 1, 1967 and Shellburne appeals.

## I.

Dismissal of the appeal is sought by the defendants as to the Order of December 28, 1966, which granted the summary judgment in favor of the defendants Dayton and Daniello individually as to their personal liability. The ground upon which the dismissal of the appeal is sought is that the appeal from the Order of December 28, 1966 was not taken until April 28, 1967, when the appeal was taken from the other Orders, all dated March 1, 1967; that, therefore, the appeal from the Order of December 28, 1966 is barred by the 60 day limitation of 10 *Del.C.* § 145 [2] and Supreme Court Rule 23, *Del.C.* [3]

Shellburne contends that the appeal is not barred by the 60 day limitation because the Order of December 28, 1966 was an interlocu-

---

2. 10 *Del.C.* § 145 provides:

"§ 145. Time for appeal from final judgment of Court of Chancery or Orphans' Court

"No appeal from a final judgment or decree of the Court of Chancery or Orphans' Court shall be received or entertained in the Supreme Court, unless the praecipe or notice of appeal is duly filed in the office of the clerk thereof within 60 days after the date of the judgment or decree. * * *."

3. Supreme Court Rule 23 provides:
    "RULE 23. LIMITATION OF ACTIONS

"No appeal shall be received in this court unless the praecipe or notice of appeal shall be filed in the office of the clerk of the court within 60 days after the entry of the judgment or decree of the court below, or, in the case of appeals from criminal cases, within 60 days after the imposition of sentence; * * *."

tory order; and it claims the benefit of 10 *Del.C.* § 144[4] which permits the withholding of an appeal from an interlocutory order until final judgment has been entered.

We dispose of the motion on the basis of Chancery Rule 54(*b*) : [5]

The Order of December 28, 1966 lacked "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment" upon the claim for money damages against Dayton and Daniello individually. Under Rule 54(*b*), a final judgment is not deemed entered in a multiple claim case in the absence of such express determination and direction. See 6 *Moore's Federal Practice* ¶ 54.28(2) ; *Sears Roebuck & Co. v. Mackey,* 351 *U.S.* 427, 76 *S.Ct.* 895, 100 *L.Ed.* 1297 (1956).

Accordingly, as was apparently conceded by the defendants ultimately, the Order of December 28, 1966 must be considered to be an interlocutory order properly included in this appeal by virtue of 10 *Del.C.* § 144. Therefore, the motion to dismiss the appeal is denied.

## II.

■ As to Shellburne's motion for leave to amend its complaint and to add the members of the new County Council as parties defend-

---

4. 10 *Del.C.* § 144 provides:

"§ 144. Failure to appeal from interlocutory order; consideration on final appeal

"A failure to appeal from an interlocutory order, judgment or decree of the Court of Chancery or Orphans' Court shall not bar a party from making any objection to such interlocutory order, judment or decree on appeal from the final order, judgment or decree."

5. Chancery Court Rule 54(*b*) provides:

"(b) Judgment upon Multiple Claims. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

ant, we cannot say that the Chancery Court abused its discretion in the denial of that motion. Compare *Bellanca Corporation v. Bellanca,* 3 *Storey* 378, 169 *A.2d* 620 (1961).

The motion to amend the complaint and to add parties was based upon the premise that the County Council was the "successor" of the Levy Court; that the actions of the Council in January 1967 were "part of the same scheme and plan" as that in which the Levy Court Resolution of January 11, 1966 figured. The premise is faulty. The Levy Court of New Castle County and the office of Levy Court Commissioner were abolished by the New Castle County Reorganization Act, 9 *Del.C.* § 1141(*b*) ; and the two incumbent Levy Court Commissioners thereby became members at large of the County Council, temporarily consisting of nine members. Thus, the Councilmen did not become "successors" to the Levy Court Commissioners as newly elected Levy Court Commissioners might have been. In the exercise of its discretion, the Chancery Court would have been warranted in concluding that the Council and its actions were not sufficiently related to the Levy Court and its actions to justify blanketing them all within the same cause of action. Any grievance that Shellburne may have against the County Council may be the subject of a separate cause of action—witness the fact that Shellburne had filed such separate action against the County Council before the hearing on this appeal.

Accordingly, the denial of Shellburne's motion to amend the complaint and add parties defendant is affirmed.

### III.

For like reasons, we are of the opinion that there was no abuse of discretion in the denial of Shellburne's motion for contempt attachment against members of the County Council. That motion was based upon the alleged violation of the Order of February 23, 1966, enjoining *inter alia* the "successors" of the Levy Court from "holding zoning hearings or in any way acting upon the resolution of the Levy Court dated January 11, 1966" and from "interfering in any way with the work under the existing Building Permit * * * or from revoking or attempting to revoke the present permit; * * *."

Obviously, the County Council was not "successor" to the Levy Court in the sense in which that word was used in the Order of Febru-

ary 23, 1966. The Levy Court Resolution of January 11, 1966 expired with the Levy Court. Moreover, there was no showing that the Council had held any zoning hearings, the Council's action being limited to the introduction, without passage, of Ordinance No. 67-5. And the Council had not interfered with any work under the building permit of December 1964, the only action by the Council regarding building permits being the passage of Ordinance No. 67-3, approved January 25, 1967, which had prospective application only to building permits applied for after January 25, 1967.

For these reasons, we find no merit in the motion for contempt attachment. The denial thereof is affirmed.

## IV.

The grant of the motion for summary judgment in favor of the defendant Dayton, as to his personal liability, raises a more difficult question.

Personal liability for money damages is asserted against Dayton for his act of voting in favor of the Levy Court Resolution of January 11, 1966, and for his action in directing the Building Inspector to stop the work under the outstanding building permit.

The complaint bases this claim upon Dayton's alleged "personal interest", "conflict of interest", and use of "public office in the furtherance of such personal interest or conflict of interest." In the briefs and arguments, Shellburne expanded these averments into allegations of fraud and bad faith.

First as to the vote on the Resolution: Zoning is a legislative function. *McQuail v. Shell Oil Company,* 40 *Del.Ch.* 396, 183 *A.2d* 572 (1962). Accordingly, in casting his vote upon the Resolution at an official meeting of the Levy Court, Dayton was acting in his legislative capacity. Members of legislative bodies are not answerable in damages on account of their votes, cast in the exercise of discretion vested in them by virtue of their office. There is an absolute legislative immunity against personal liability in this regard, the motive underlying the legislative vote, good or bad, being wholly irrelevant. *E. g., Village of Hicksville v. Blakeslee,* 103 *Ohio St.* 508, 134 *N.E.* 445, 22 *A.L.R.* 119 (1921) ; *Pawlowski v. Jenks,* 115 *Mich.* 275, 73 *N.W.*

238 (1897); Gray "Private Wrongs of Public Servants" 47 *Cal.L. Rev.* 303, 318 (1959). The necessity for a free and fearless independence of action on the part of members of legislative bodies, in the performance of their legislative duties, is the obvious basis for this absolute immunity. Thus, without weighing Shellburne's assertions of personal interest, fraud, and bad faith, because of their irrelevance to this issue, we find no error in the granting of summary judgment in Dayton's favor with regard to his voting upon the Resolution of January 11, 1966.

Shellburne cites, in this connection, *Mills v. Town Plan and Zoning Commission of Town of Windsor*, 144 *Conn.* 493, 134 *A.2d* 250 (1957); *Bracey v. City of Long Branch*, 73 *N.J.Super.* 91, 179 *A.2d* 63 (1962) ;*Pyatt v. Mayor and Council of Borough of Dunellen*, 9 *N.J.* 548, 89 *A.2d* 1 (1952); *Genkinger v. City of New Castle*, 368 *Pa.* 547, 84 *A.2d* 303 (1951); and other authorities dealing with the disqualification of members of legislative bodies by reason of personal or conflicting interest. The cited authorities are inappostite because they deal with the validity of the legislative action taken—not with personal liability on the part of legislators for resulting damages to others.

▇ A different situation is presented, however, as to the directive issued by Dayton to the Building Inspector to stop Shellburne from proceeding with the construction under the outstanding building permit. According to the record before us, this action was taken by Dayton alone, without specific authorization by the Levy Court, prior to the adoption of the Resolution—indeed without prior knowledge of either of the other two Commissioners—and without notice to Shellburne or opportunity for hearing. Subsequent knowledge by the other two Commissioners did not result in ratification by the Levy Court.

▇ It is clear from these circumstances that this action by Dayton was not taken in a legislative or quasi-judicial capacity; it was action taken by him as one of the three executive officers of the County.[6]

---

6. For the multiple legislative, quasi-judicial, and executive powers of the Levy Court, see 9 *Del.C.* § 1521 (prior to enactment of the New Castle County Reorganization Act). No such powers were vested by the Statute in individual Commissioners.

██ Shellburne asserts that the stop-work order issued by Dayton was wrongful, there being a valid building permit outstanding, unaffected by any rezoning of the tract or by any violation of existing law, rules, or regulations. Dayton's only explanation for his action is expressed in his deposition as follows:

> "Well, because I didn't want anybody hurt. I didn't want you [Shellburne] hurt, and I thought the people here should have a voice, to come before the Levy Court and let's hear the case. That's the only reason why. I specified that to him, just to stop expending any more money, and let's bring it to a hearing. That's the only reason."

This is a reason; but it is not a sufficient justification for Dayton's action which, in effect, constituted a revocation of the building permit. No legal basis appears for the revocation of the permit by a single member of the Levy Court. We conclude, upon the undisputed facts of this case, that Dayton acted wrongfully in thus directing the stoppage of the work.[7]

The issue thus presented is whether Dayton, as an executive officer, is personally answerable in damages for such wrongful act. It is our opinion that this issue must be adjudicated.

██ The initial question in this connection is whether issuing a stop-work directive to the Building Inspector was within the general scope of Dayton's authority. If it was, he is immune from personal liability, but the immunity is conditioned upon the absence of bad faith or malice or improper motive. A public executive officer is adequately protected, in our opinion, by such conditional immunity. A proper balance is struck thereby between adequate protection for the properly motivated public official against harassment by a vindictive citizen, and adequate protection for the private citizen against the malice or bad faith of an improperly motivated public official. We realize that the federal rule grants a complete immunity to executive officers acting within the scope of their authority, *Barr v. Matteo,* 360 U.S. 564, 79 *S.Ct.* 1335, 3 *L.Ed.2d* 1434 (1959); but we think that such absolute immunity affords too much protection for the

---

7. We do not rule upon the power of the Levy Court, acting as a body, to revoke the building permit or to ratify Dayton's action. Neither of these questions arise under the facts before us.

public official and too little protection for the private citizen. We adopt as the better rule the conditional immunity for executive officers acting within the general scope of their authority, prevailing in the great majority of the states, under which malice or bad faith or corrupt motive will transform an otherwise immune act into one from which liability may ensue. See *Short v. News-Journal Company, Del.*, 212 *A.2d* 718 (1965) in which the question of privilege of State executive officers was expressly reserved; compare *Carr v. Watkins,* 227 *Md.* 578, 177 *A.2d* 841 (1962); *Carder v. Steiner,* 225 *Md.* 271, 170 *A.2d* 220 (1961); *Biggans v. Foglietta,* 403 *Pa.* 510, 170 *A.2d* 345 (1961); 43 *Am.Jur.* "Public Officers" § 276; 2 *Am.Jur.2d* "Administrative Law" § 803; 67 *C.J.S. Officers* § 127; Gray "Private Wrongs of Public Servants", 47 *Cal.L.Rev.* 303, 322, 342 (1959); *Prosser on Torts (3d Ed.)* § 126; *Harper and James, Law of Torts, Section* 29.10; Jennings, "Tort Liability of Administrative Officers," 21 *Minn. L. Rev.* 263 (1937).

▆▆▆ This conditional immunity will apply to any conduct within the outer perimeter of Dayton's authority. Compare *Barr v. Matteo, supra.* On the other hand, if it is determined that Dayton acted in the clear absence of authority in issuing the directive to the Building Inspector, Dayton is answerable in damages for wrongfully revoking the building permit, regardless of his motive. This is so because the law holds public officers amenable to personal liability for damages caused by their wrongful acts committed in the clear absence of authority. *Bradley v. Fisher,* 13 *Wall.* 335, 352, 20 *L.Ed.* 646 (1871); 43 *Am.Jur.* "Public Officers" § 277; 2 *Am.Jur.2d* "Administrative Law" § 802; 67 *C.J.S.* "Officers" § 126; *Prosser on Torts (3d Ed.)* p. 1017; Harper and James, *Law of Torts,* p. 1643.

It thus becomes apparent that, in the determination of Dayton's personal liability, these issues must be decided: first, in issuing the stop-work directive to the Building Inspector, did Dayton act within the scope of his authority or did he act in the clear absence of authority; second, if he acted within the scope of his authority, did he act in bad faith or with malice or for an improper motive; and third, if liable, did he proximately cause Shellburne any measurable damages?[8]

8. In this connection, it is noteworthy that, within a short time, Shellburne agreed to the entry of the injunction against further work on the project as a condition imposed by the Court to the injunction against further zoning proceedings by the Levy Court.

If it is found that Dayton acted within the scope of his authority, there is a genuine issue of material fact, in our view, as to the question of good faith and malice and proper motive on Dayton's part in his revocation of the building permit. On the one hand, Shellburne offers evidence from which it may be reasonably inferred that Dayton was motivated (1) by his desire to assist his coreligionists and the Church which had been active in opposing the commercial development of the tract; and (2) by the close attorney-client and business relationship between Dayton and the attorney for the civic association formed to accomplish the rezoning of the subject tract; and (3) by his colleague Daniello whose wife was a member of the Church located across from the tract. On the other hand, countering this, it may be found from Dayton's testimony that his only motive was to save Shellburne from unnecessary financial risk in going forward with the construction in view of the forthcoming Levy Court Resolution requesting the Zoning Commission to review the zoning classification of the tract. Under the particular facts and circumstances here presented, including the combination of the three sets of circumstances above mentioned and the extraordinary step taken by Dayton alone in stopping the work, there is formed in our opinion, a genuine issue of material fact as to motive which must be decided by the trier of fact if Dayton's conduct is found to be within the scope of his authority.

In granting the summary judgment, the Chancery Court reasoned that since a governing body would not be held liable in damages for the wrongful revocation of a building permit, such immunity extends to the individual members of the body, citing *Delaware Liquor Store, Inc. v. Mayor and Council of Wilmington,* 6 Terry 461, 75 *A.2d* 272 (1950) ; *Rehmann v. City of Des Moines,* 204 *Iowa* 798, 215 *N.W.* 957, 55 *A.L.R.* 430 (1927) ; *Wasserman v. City of Kenosha,* 217 *Wis.* 233, 258 *N.W.* 857 (1935) ; McQuillen, *Municipal Corporations,* § 26.212. The rule and the authorities are inapposite in the instant case, we think, because in the cited cases the revocation action was taken by the governing bodies and the members thereof, duly assembled and acting officially in the performance of their duties. No analogy may be drawn between such joint action by members of a governmental body and Dayton's solo act in the instant case.

In holding that there is a genuine issue of material fact sufficient to require trial of the issue of motive, if it is decided that

Dayton acted within the scope of his authority, we have given due consideration to the rebuttable presumption of good faith and propriety of conduct that inures to all public officers. *Shellburne, Inc. v. Roberts, Del.,* 224 *A.2d* 250 (1966); compare *Judah v. State, Del.,* 234 *A.2d* 910 (decided November 2, 1967); Gray "Private Wrongs of Public Servants", 47 *Cal.L.Rev.* 303, 323, *f.n.* 123. Dayton will have the benefit of that presumption at trial. But at the summary judgment stage upon the motion of the defendants, all inferences of fact must be resolved in favor of Shellburne. *Jones v. Julian, Del.,* 195 *A.2d* 388 (1963); 6 *Moore's Federal Practice (2d Ed.)* §§ 56.11(10) and 56.15(3). In that posture, under the circumstances of this case, the presumption of good faith is sufficiently rebutted, in our judgment, to require trial of the issue of motive, if Dayton's conduct is found to be within the scope of his authority.

Accordingly, the summary judgment must be reversed as to Dayton's personal liability for the directive to the Building Inspector, and the cause is remanded for determination of that issue; otherwise, the summary judgment is affirmed.

\* \* \*

■ For the sake of clarity, we have discussed the problem in terms of the Dayton facet of the summary judgment. Turning to the Daniello facet, we affirm the summary judgment in his favor. For the reasons aforementioned, Daniello is immune from any personal liability for acting in his legislative capacity in voting upon the Resolutionary of January 11, 1966. As to the stop-work directive, there is no indication that Daniello participated in the issuance of the directive to the Building Inspector, the only tie-in attempted by Shellburne being the assertion that Daniello was silent and failed to repudiate Dayton's action after learning of it. Assertion of liability upon that basis is too tenuous to merit further discussion.

Accordingly, the summary judgment in favor of Daniello is affirmed.

## V.

Turning to the dismissal of the action, in view of the abolition of the Levy Court and the expiration of its Resolution of January 11, 1966, it is quite apparent, we think, that all other issues raised by the

complaint are now academic, with one exception: the present status of the building permit.

The defendants assert that, included within the Order dismissing the action, is the ruling that the building permit is now invalidated by reason of Section 114.2 of the Building Code of New Castle County which provides: "Any permit issued shall become invalid if the authorized work is suspended or abandoned for a period of six (6) months after the time of the commencement of the work." It is asserted that this point was briefed and argued in connection with the motion to dismiss the action.

Since we are unable to ascertain from the record whether the dismissal Order included such ruling, we shall assume that it did. As to that phase of the case, the Order of dismissal must be reversed. Under all of the circumstances of this case, we think it unfair and unjust to invoke Section 114.2 against Shellburne. The cessation of work by Shellburne occurred after the purported revocation of the permit and was part of the travail of this litigation. It was a condition imposed by the Court in connection with its injunctive Order of February 23, 1966. Obviously, it was not the type of voluntary suspension or abandonment of work contemplated by the drafters of the Building Code. We hold that Section 114.2 is inapplicable in the extraordinary circumstances of the instant case.

It follows, in our opinion, that the building permit of December 22, 1964 stands valid and in force and effect. As the result of the Order of March 1, 1967, dismissing the action below and expressly revoking the injunctive Order of February 23, 1966, work under the building permit is no longer enjoined; there has been no rezoning of the tract of land to date and it remains zoned for commercial usage; and Section 114.11 of the Building Code relates only to building permits issued after January 25, 1967. Therefore, we can find no present legal impediment as to the building permit or renewal of work thereunder.

Accordingly, except as to the status of the building permit and the issue of Dayton's personal liability for damages, the dismissal of the action is affirmed. As to those issues, the judgment below is reversed and the cause is remanded for further proceedings not inconsistent herewith.

## UPON PETITION FOR SPECIAL MANDATE

The defendants applied for a special mandate in this appeal; and pending the determination of that application, the defendants petitioned this Court for a stay of any further building construction by Shellburne.

■ It appeared that Shellburne commenced construction on the day after the above opinion was filed, not awaiting the expiration of the period allowed for reargument or the issuance of the mandate out of this Court. In so doing, Shellburne acted too precipitously, of course. We declined, however, to issue a stay of the building construction on the grounds that such stay would amount to a restraining order, and that this Court lacks the power to grant such injunctive relief directly. We ruled that if the purpose of the relief sought was to maintain the *status quo* pending the finalization of this appeal, the power to grant such relief rests in the Chancery Court. *Biggs Boiler Works Co. v. Smith,* 32 *Del.Ch.* 411, 82 *A.2d* 919 (1951) ; *du Pont v. du Pont,* 32 *Del.Ch.* 405, 82 *A.2d* 376 (1951).

■ The special mandate requested would restrain Shellburne from proceeding with construction until after the County Council shall have reasonable time to act upon a proposed zoning change, including the requisite public hearing and 15 days prior notice thereof. 9 *Del.C.* § 2611. This, too, amounts to a request for injunctive relief by this Court directly. Since, as we have stated, we lack the power to grant such relief, the special mandate must be denied.