WILLDEL REALTY, INC., a corporation of the State of Delaware, Herbert Sternstein and Blanche Sternstein, his wife, Vornado, Inc., a corporation of the State of Delaware, and Wilmington Holding Corporation, Plaintiffs,

v.

NEW CASTLE COUNTY, Defendant.

Court of Chancery of Delaware, New Castle.

Sept. 30, 1970.

Gerald Z. Berkowitz, of Knecht, Greenstein & Berkowitz, Wilmington, for plaintiffs.

Robert E. Daley, Wilmington, for defendant.

DUFFY, Chancellor:

This is an action to invalidate a series of ordinances enacted by the New Castle County Council. Plaintiffs are the legal and equitable owners of approximately 27 acres of land fronting on the Kirkwood Highway which was subject to an "emergency" Ordinance (No. 67–3) passed in January 1967 and a permanent zoning Ordinance enacted in August 1967. This is the decision after final hearing.

### A.

Herbert and Blanche Sternstein and Willdel Realty, Inc., purchased the property in February 1965 when it was designated R–2 under the New Castle County Zoning Code. At that time R–2 was a holding classification for an undeveloped area, the ultimate use of which was to be determined as rezoning requests were considered. On April 15, 1966 the Sternsteins and Willdel contracted to sell the property to Vornado, Inc., for $925,000. The sale was conditioned upon rezoning to C–2, a commercial roadside classification. The parties to the contract, at the prompting of the Levy Court which then governed the County, imposed (setback, fencing, access and other) restrictions upon the property by deed. On December 30, 1966 the Levy Court granted C–2 zoning.

As of January 3, 1967, the Levy Court was abolished and the government of New Castle County was reorganized under a County Council. 9 Del.C. § 1101, etc. The first Ordinance (No. 67–1), introduced in Council on January 9, 1967, proposed to rezone the 27 acres from C–2 to R–4, a multifamily residential classification. For procedural reasons this same proposal was later reintroduced as Ordinance No. 67–4.

The "emergency" Ordinance, introduced at the same time, prohibited issuance of building permits for land which was subject to proposed zoning changes.[1]

As a result of the action taken by Council, disagreement developed between the parties to the sale contract over whether the rezoning condition had been met. A suit for declaratory judgment was filed in this Court in March 1967 to determine their respective obligations. The suit was settled when Vornado purchased a half interest in the property and Wilmington Holding Corporation, a wholly-owned subsidiary of Vornado, purchased the other half.

Site and ground plans in line with the then-existing C–2 classification were offered by Vornado and approved by the County Department of Planning (after some delay). On June 20, 1967 the Department of Planning recommended rezoning to R–4. An application for a building permit was filed on August 11, 1967. Three days later the property was rezoned by the Council from C–2 to R–4.

### B.

Plaintiffs make many arguments, the first of which is, rezoning was invalid because they were not given adequate notice of a second public hearing (on July 17, 1967) before the Planning Department. They concede notice of the first hearing.

 It was plaintiffs' burden to put in evidentiary facts to support their argument as to notice. They did not do so and the argument fails for want of proof.[2] In

short, plaintiffs did not prove the absence of notice about which they complain.

### C.

I next consider the "emergency" Ordinance. Plaintiffs contend that it amounted to an arbitrary restriction directed principally to the land in question and therefore it should be held invalid as to them.

 Emergency ordinances generally have been upheld during an "incubation" period when, for example, rural, undeveloped lands of newly organized municipal corporations or annexed lands to established communities are in jeopardy. 1 Antieau, Ch. VII, §§ 7.29, 7.99(1). In Rathkopf, The Law of Zoning and Planning, 57–35, the "protected territory rule" is put in the same perspective:

"Among the devices adverted to in the earlier days of zoning to prevent the acquisition of vested rights on the basis of permits lawfully issued under the then-existing zoning regulations was that of an interim ordinance prohibiting the erection, alteration or maintenance, within the community or certain designated areas thereof, of that class of use or structure contemplated to be prohibited by the amendatory ordinance."

Such emergency or stopgap measures are necessary because, as stated in 58 Am.Jur., Zoning, § 137:

"* * * it takes much time to work out the details of a comprehensive zoning plan, and * * * it would be destructive of the plan if, during the period of its incubation, persons seeking to evade its operation should be permitted to enter upon a course of construction which

---

1. Ordinance No. 67–3, approved on January 25, 1967, amended the Building Code of New Castle County to read as follows:
 "No permit shall be issued under this Building Code for construction, alteration, removal, demolition or other building operation upon land with respect to which an ordinance to change its zoning classification has been introduced in County Council until official adoption or

rejection of the ordinance or until the expiration of 90 days from the date on which such ordinance was introduced in County Council, whichever first occurs."

2. The County contends that adequate notice was given and that, in fact, plaintiffs were represented by counsel at all hearings.

would progress so far as to defeat, in whole or in part, the ultimate execution of the plan."

■ This case, however, does not come within that rationale. In November, shortly before the Ordinance was passed, a comprehensive plan had been adopted by the County. And the land here involved, although undeveloped, is situated within a highly developed area for which patterns of construction and development were already established. The Council may have been in an incubation period, but the property (and the surrounding area) certainly was not. In short, the facts do not show that the County is entitled to rely upon the "incubation" theory as a basis for denying a building permit to plaintiffs.

But that does not end the matter.

■ It is incumbent upon plaintiffs to show that but for the Ordinance they would have been entitled to a building permit. And they have failed to do this. Viewed realistically, the Ordinance undoubtedly had a chilling effect on plaintiffs' plans to begin construction. But by its terms the Ordinance ended ninety days after it was enacted. Thereafter plaintiffs were free to apply for a permit, but they did not do so until some three months after the "emergency" period expired.

■ As plaintiffs argued at trial, there is often a time lag between rezoning and application for a building permit while site studies are made and related engineering is done. The record is ambiguous on what that amounted to in this case, but I cannot find as a fact that plaintiffs had completed such work and were prepared to apply for a building permit at any time during the period in which the Ordinance was in effect.

To sum up: I doubt that Ordinance No. 67–3 could be validly applied to these plaintiffs, but they have not shown that they were denied a building permit because of it.

■

### D.

I turn now to plaintiffs' argument that the Ordinance which rezoned the property to R–4 is invalid because it is based upon neither a change in zoning concept nor in physical conditions.

The County tacitly concedes that rezoning was not undertaken to correct mistakes nor does it rely upon any deficiency in the proceeding which accomplished the change to C–2. It argues, rather, that zoning is a legislative act and that it should be free to enact such classifications as it deems to be in the public interest.

■ In this context the parties have gone to swords over the burden of proof. Thus plaintiffs say that the burden is on the County as "proponent" of reclassification; they argue that the Council is here in the role of a citizen-proponent of zoning change and it has the burden of such an applicant. But that argument is not persuasive. I find nothing in the statute, 9 Del.C. § 1153, nor in the cases which supports such a restrictive view of the Council's discretion in legislative matters. See, for example, Dukes v. Shell Oil Co., 40 Del.Ch. 174, 177 A.2d 785 (1962); aff'd McQuail v. Shell Oil Co., 40 Del.Ch. 396, 183 A.2d 572 (1962); and Shellburne, Inc. v. Roberts, Del.Supr., 224 A.2d 250 (1966). The Ordinance is entitled to a presumption of validity but I do not rely on that in finding for the County.

The parties argue also as to whether physical change or mistake must be found before the Council may rezone a property, at least on its own initiative. Plaintiffs invoke the so-called Maryland rule which, in effect, is that rezoning may only be sustained where there is "strong evidence of mistake" in the original zoning or where there is a "substantial change in conditions" in the neighborhood. MacDonald v. Board of County Commissioners, 238 Md. 549, 210 A.2d 325, 328 (1965). The County argues that such a rule is a minority view adopted in very few states and

expressly rejected in others. See the discussion of the Maryland rule by Vice Chancellor Short in the latest opinion in *Shellburne*, Shellburne, Inc. v. Conner, et al., Del.Ch., 269 A.2d 409 (1970).

■ It seems to me that the case is governed largely by the Supreme Court's opinion in Shellburne, Inc. v. Roberts, supra. While that was written on the basis of the zoning statute as it was then administered by the Levy Court, there has been no significant change in the statutory scheme of zoning since the opinion was filed. Shellburne, Inc. v. Conner, supra. In *Roberts*, the Supreme Court held that (a) the Levy Court may institute a change in zoning on its own initiative, and (b) it may do so even if the owner has obtained a building permit for a use permitted under present classification but forbidden in the proposed classification. Shellburne, Inc. v. Buck, Del.Supr., 240 A.2d 757 (1968). And so here. The County government initiated the change without request, ownership had not changed, and (unlike *Shellburne*) the owners did *not* have a permit at the time of rezoning. And plaintiffs have not shown any of the kinds of matters which create vested rights as outlined in the Supreme Court's opinion in *Roberts*.[3]

■ There is, however, one test formulated in *Roberts* which must be applied here; the Court said:

"The standards of due process applicable to rezoning upon the petition of a property owner remain applicable to rezoning upon the Levy Court's initiative; the discretion residing in the Levy Court, acting in its legislative capacity, remains the same in both instances; and the same judicial review for rectification of arbitrary and capricious action remains available, whether the change is made by the Levy Court on its own initiative or on the initiative of a property owner."

Was the action by the Council in rezoning plaintiffs' property arbitrary and capricious?

■ "Arbitrary and capricious" is usually ascribed to action which is unreasonable or irrational, or to that which is unconsidered or which is wilful and not the result of a winnowing or sifting process. It means action taken without consideration of and in disregard of the facts and circumstances of the case. Action is also said to be arbitrary and capricious if it is whimsical or fickle, or not done according to reason; that is, it depends upon the will alone. See the various definitions in 6 C.J.S. Arbitrary. Here, there was a full exploration of the facts by the Department of Planning, there was a spirited public hearing by the Council itself, and there was an abundance of technical data before the Council when it acted. By these tests the action of Council in rezoning was neither arbitrary nor capricious.

■ There is one final argument which must be considered in determining whether the rezoning was arbitrary and capricious. There is respectable authority for the proposition that a total absence of evidence relating to mistake or change in conditions would make a change in zoning appear to be arbitrary. *Rathkopf*, supra, 27–21. Here, no change in conditions, and no mistake, was shown by the evidence. And for this reason the rezoning has aspects of unfairness to plaintiffs—property owners who in good faith took the necessary and proper steps to apply for and obtain C–2 zoning. The Court is aware of that and of the private interest which followed from rezoning. But private interest must be fairly balanced against the public interest, which "in the long run must prevail over the interests of particular individuals." Shepard v. Village of Skaneateles, 300 N.Y. 115, 89 N.E.2d 619 (1949).

■ I emphasize that we are concerned with a legislative act, the wisdom of which

---

3. The contract of sale was made in April 1966, before the property was rezoned to C–2.

must be determined by the Council and not the Court. In that context the act does not appear to be arbitrary, even without change or mistake. I say this because there is an abundance of evidence testifying to the chaotic condition of development along the Kirkwood Highway. Indeed any deficiency in the record on that point could easily be supplied by judicial notice. Given the responsibility which Council has for zoning in that complex area (and its inevitable impact upon public health and safety), the full discussion of the problems shown by this record, and the broad discretion accorded a legislative body in zoning matters, I cannot say Council's action was arbitrary by any test. And, on this same point, rezoning here was considered, not in isolation, but as part of rezoning of some twenty-three parcels in the same area. And, of course, R–4 zoning has not left the property in an unusable state; indeed, it may be used for apartment purposes which is one species of "commercial" use.

To sum up: Council had the power to make the change in zoning, plaintiffs have not shown any rights vested in them which would preclude Council from exercising that power, nor have they shown that exercise of the power amounted to arbitrary and capricious conduct as a matter of law.

The Court cannot require the public interest, as expressed by the Ordinance, to give way to that of the private property owners. Compare Anderson, American Law of Zoning, § 2.19.

E.

■ Finally, plaintiffs argue that Ordinance 67–4 was passed in violation of Resolution 66–433 and is therefore invalid. That resolution, passed by the Levy Court on June 21, 1966, extended the prohibition upon petitions for "amendment, change or modification" of any zoning classification from six months to one year after prior rezoning proceedings. The County Council passed Ordinance No. 67–13 on January 3, 1967 which continued in effect all codes and regulations in the form previously adopted by the Levy Court "until such time as changed or amended." However, 9 Del.C. § 1344(b) (3) [4], also effective on that day, provides a procedure for rezoning which does not require a petition to initiate change. The statute, therefore, effectively amends the procedure which governed the Levy Court and renders void, for present purposes, Resolution 66–433.

\* \* \*

Judgment will be entered for defendant.

4. 9 Del.C. § 1344(b) (3) reads:
"\* \* \* the adoption, repeal, or amendment of an official map, subdivision and land development ordinance, or zoning ordinance shall be taken in compliance with the following requirements: (i) the proposed actions shall be submitted to the Department for recommendations, provided that the County Council may act without benefit of the Department's recommendations if they are not submitted within 45 days, and (ii) the County Council shall find that the proposed actions are in accordance with the spirit and intent of the formally adopted portions of the comprehensive development plan before final action shall be taken by the County Council. When the County Council finds that a proposed action is not in accordance with the spirit and intent of the formally adopted portions of the comprehensive development plan it shall amend the plan to make the action taken and the comprehensive development plan consistent with each other."