**SHELLBURNE, INC., a corporation of the State of Delaware, Plaintiff,**

v.

**William J. CONNER, Executive, et al., Defendants.**

Court of Chancery of Delaware, New Castle.

Jan. 25, 1974.

Donald W. Booker, Booker, Leshem, Green & Shaffer, Wilmington, for plaintiff.

Harvey B. Rubenstein, Wilmington, for defendants.

QUILLEN, Chancellor:

This litigation is the latest in a series [1] of efforts by the plaintiff, Shellburne, Inc., to compel reinstitution of C–1 (neighborhood shopping) zoning status for a tract of land which it owns in Brandywine Hundred, New Castle County, Delaware. The land is bounded by Carr Road on the north, Carwell Place on the east, Weldin Road on the south, and Shipley Road on the west.

In 1950, the plaintiff purchased the land in question as part of a larger tract, known as "Shellburne", for residential development. In its original zoning of New Castle County in 1954, the Levy Court zoned the entire development of Shellburne R–1–C (for residential use), with the exception of the block of land here in question. Apparently in anticipation of eventual development as a neighborhood shopping center, this tract was zoned C–1.

For various reasons, the plaintiff's tract has remained undeveloped. All of the surrounding land within a radius of seven-tenths of a mile has been developed for residential use, with the exception of a church-school complex located directly across Shipley Road from the plaintiff's land.

On December 24, 1965, the plaintiff obtained a building permit in order to commence construction of a neighborhood shopping center on its tract. Shortly thereafter, with citizen pressure mounting against the shopping center, County officials suspended the building permit. It has never been reinstated.

In November of 1966, the citizens of New Castle County elected their first

County Council.[2] And, on January 9, 1967, at its first meeting, Councilman Richard Sincock introduced to the newly-elected County Council an ordinance to rezone plaintiff's land from C–1 to R–1–C. The ordinance was referred to the New Castle County Department of Planning and Planning Board for consideration.

On April 4, 1967, a public hearing on the proposed ordinance was held before the Planning Board. Subsequently, relying in part on the results of that hearing and the report of Richard M. Bauer, Director of the Department of Planning, the Planning Board recommended unanimously to the County Council that the proposed rezoning be adopted. On May 27, 1968, after a public hearing on the matter, the County Council adopted the ordinance rezoning plaintiff's tract to R–1–C. Eight members of the Council voted for its adoption; none against; and one "present". The ordinance, permanently numbered Ordinance No. 68–36, was also approved by the County Executive.

On June 10, 1968, the plaintiff filed this action seeking temporary and permanent injunctive relief and a declaratory judgment.

The plaintiff has attacked the rezoning as invalid on constitutional grounds and as the result of arbitrary and capricious actions by the defendants. On pretrial motion by the County to dismiss the complaint for failure to state a claim upon which relief can be granted, Vice Chancellor Short, in Shellburne, Inc. v. Conner, Del.Ch., 269 A.2d 409, 411 (1970), dismissed the plaintiff's constitutional arguments as "not persuasive". However, relying on Allen v. Donovan, Del.Supr., 239 A.2d 227 (1968),

1. The extensive history of litigation surrounding this property may be obtained by reading Shellburne, Inc. v. Roberts, 43 Del.Ch. 276, 224 A.2d 250 (Del.Supr.1966) ; Shellburne, Inc. v. Roberts, 43 Del.Ch. 485, 238 A.2d 331 (Del.Supr.1967) ; Shellburne, Inc. v. Buck, 43 Del.Ch. 534, 240 A.2d 757 (Del. Supr.1968) ; Shellburne, Inc. v. Conner, Del. Ch., 269 A.2d 409 (1970), and Conner v.

Shellburne, Inc., Del.Supr., 281 A.2d 608 (1971).

2. By 55 Del.Laws, Ch. 85, effective January 3, 1967, the Levy Court system of government was abolished in New Castle County and replaced by a county government consisting of a County Executive and County Council.

the Vice Chancellor did conclude that the County Council, as with its predecessor Levy Court, was required to hold its zoning hearings as adversary proceedings. Nevertheless, on appeal by the County, Conner v. Shellburne, Inc., Del.Supr., 281 A.2d 608 (1971), the Supreme Court held that the *Allen* requirement for an adversary hearing was not applicable to zoning hearings before the County Council. "We see no sound reason for distinguishing the legislative process in the County Council from that in the General Assembly with respect to the nature of public hearings." 281 A.2d at 609.

At the. same time, the Supreme Court explained that the standards it had set forth that day in Willdel Realty, Inc. v. New Castle County, Del.Supr., 281 A.2d 612 (1971), were to be applied at trial on the merits of that part of Shellburne's complaint which Vice Chancellor Short had not dismissed. In *Willdel*, the Supreme Court refused to apply the minority rule on validity of zoning changes to rezonings in Delaware. Adoption of this rule, often called the "Maryland rule", would have required a change in conditions or proof of mistake in classification in order to justify a rezoning, such as took place when Shellburne's land was rezoned from C–1 to R–1–C. But, after careful review of the question. the Supreme Court held that the majority rule, which requires proof of arbitrary or capricious action on the part of the zoning authority, to be the burden for establishing an invalid rezoning in Delaware.

"We hold, therefore, that it is unnecessary, in order to uphold a rezoning ordinance, that there be a showing of change of condition or mistake; it is sufficient that the ordinance shall not be arbitrary and capricious in that it is reasonably related to the public health, safety, or welfare."

281 A.2d at 614.

In essence, the Supreme Court held that, upon remand for trial, the plaintiff here,

Shellburne, Inc., had the burden of proving that the rezoning of its land was arbitrary, capricious, and without reasonable relationship to public health, safety or welfare. It should also be noted the Supreme Court already had made it clear that the property owner has no vested right in a zoning classification. Shellburne, Inc. v. Roberts, *supra*, 43 Del.Ch. at 281, 224 A.2d at 254.

The trial on the validity of the rezoning was held before Vice Chancellor Short over the course of several days in April and June 1972. However, since the Vice Chancellor retired before counsel were able to submit their post trial briefs, I was assigned to the case and heard final oral arguments. Based on the whole record, I render this final decision on the merits. In particular, this is the Court's decision on the validity of the rezoning of plaintiff's land.

In Willdel Realty, Inc. v. New Castle County, Del.Ch., 270 A.2d 174, 178 (1970), Chancellor Duffy furnished a standard for ascertaining the validity of rezonings such as the one now before the Court:

"'Arbitrary and capricious' is usually ascribed to action which is unreasonable or irrational, or to that which is unconsidered or which is wilful and not the result of a winnowing or sifting process. It means action taken without consideration of and in disregard of the facts and circumstances of the case. Action is also said to be arbitrary and capricious if it is whimsical or fickle, or not done according to reason; that is, it depends upon the will alone."

Given this definition and the record now before it, the Court cannot conclude as a matter of law that the plaintiff's land was invalidly rezoned. Several factors lead to the conclusion that the County was not acting arbitrarily or capriciously when it adopted Ordinance No. 68–36 rezoning plaintiff's land.

First, although the rezoning ordinance was introduced as one of the first items of

business before the newly-created County Council, the matter of a shopping center on plaintiff's land was hardly a novel issue to the citizens of the community or their elected representatives. It had already been the subject of litigation and was apparently an issue of some importance in the recent election campaign. Moreover, Mr. Sincock, who introduced the ordinance, testified that civic associations and other interested parties had brought this matter to his attention before he took office. In light of such evidence of public interest, it can as easily be concluded that it would have been unreasonable and arbitrary for the Council *not* to consider a rezoning proposal. Furthermore, it should be noted that the rezoning was not adopted immediately. Rather, it was submitted to the Department of Planning and Planning Board for public hearing and evaluation.

Second, the Court cannot ignore the record of the public hearing held before the Department of Planning and Planning Board on April 4, 1967. It shows that many persons participated in a vigorous and thorough discussion of the merits of the rezoning proposal. Plaintiff's counsel, himself, argued for maintenance of C–1 zoning. Counsel for various civic associations and the Church whose school is across Shipley Road from the tract spoke in support of rezoning. These speakers were joined by several others who presented a full spectrum of viewpoints on the matter. And the members of the Planning Board were not reticent in asking tough questions of many of the advocates. All in all, the record indicates that the rezoning proposal was full and fairly aired at the April 4, 1967 public hearing.

Thirdly, the Court notes that, as a result of the above discussed hearing and other studies, the Department of Planning and Planning Board unanimously recommended to the County Council that the proposed rezoning be adopted. Although the plaintiff, at trial and oral argument, has criticized the recommendation as the result of poor and incompetent planning, the Court can reach no such conclusion. The recommendation to rezone to R–1–C was based on the following observations and rationale:

"The subject property is surrounded by residential-type development and is across the street from a school and church complex.

The shape of the parcel is rectangular, thereby creating a difficult design problem for access, parking, and siting of buildings so as to minimize impact, if it is developed commerically.

Presumably, if commercial use is developed, it will probably cater in part to that element of the market represented by school children, thereby drawing children back and forth across Shipley Road who would otherwise have no occasion to cross the heavily traveled artery. Furthermore, the mixture of commercial and educational land uses in general should not be encouraged as an acceptable planning concept.

The subject property is between an elementary school and the service area of the school—thereby contributing to a potential conflict between school uses and commerical oriented vehicles, school children and other pedestrians.

There is no control over the shape or placement of the commerical use relative to the surrounding land uses—that is, there is only one place for the development to occur with no opportunity for planned development.

Existing commerical development serving the full-range of consumer needs is conveniently located within several minutes of the subject property, e. g., Merchandise Mart, Gaylords, Graylyn Shopping Center."

While it is possible to debate these findings and to compare the proposed development with others in the County, the record indicates that these findings are not unreasonable. More importantly, it was

within the discretion of the County Council to weigh that recommendation and grant it whatever weight it felt proper in light of all the circumstances.

Fourthly, at the May 27, 1968 public meeting of the County Council, when the proposed ordinance was finally adopted, the Planning Board's findings, together with other arguments for and against the rezoning were discussed, argued and weighed in a manner which hardly demonstrated capricious disregard for public welfare. Time and again speakers expressed concern about the increased traffic a shopping center would bring into the area with its concomitant danger to school children. They spoke of presently existing shopping facilities within easy access of the neighborhood. They spoke of the disruption a shopping center would mean, as well as its incompatibility with the existing neighborhood. They spoke of the preferability of residential housing on the tract. They spoke as representatives of several neighborhood civic associations, and a large number of citizens stood when asked to demonstrate their support of the rezoning proposal. No elected official should honestly be expected to ignore such a demonstration.

◼ Parties who opposed rezoning, including plaintiff's counsel and expert, spoke in support of a neighborhood shopping center at the location in question. They disputed the findings and statements of the rezoning proponents with arguments of their own. Many of these arguments were not without merit. But, in the scheme of our system of government, it is the County Government's role, not this Court's, to weigh the merit of such arguments. Under the law in Delaware, as explained in Willdel Realty, Inc. v. New Castle County, Del.Supr., 281 A.2d 612 (1971), this Court can only find that a rezoning is invalid when the ordinance is arbitrary, capricious, and not reasonably related to the public health, safety, or welfare. The Court cannot make such a finding in this case.

◼ The plaintiff has also made a broad and sweeping attack on the entire zoning and rezoning system in New Castle County as unreasonable, unfair and confiscatory. In Delaware, zoning is a constitutionally recognized activity within the police power of the State. Article II, § 25 of the Delaware Constitution, Del.C.Ann. The procedures involved are established by statute, 9 Del.C. § 2601 et seq. Unless the County exceeds its constitutional and statutory bounds in a rezoning, it is not proper for the Courts to act. The Court finds that no such overreaching occurred in the case at bar.

◼ Lastly, it should be noted that, while perhaps the plaintiff's rezoned land is not as valuable as it once was, the record shows that substantial profits may still be made if plaintiff develops its land for residential use in keeping with its current R–1–C zoning classification. Furthermore, the plaintiff waited ten years from the time of the original zoning in 1954 until it sought a building permit for construction of a shopping center on its land. Many things, including the public's attitude, changed. And landowners cannot expect that undeveloped land will invariably retain a certain zoning status over such a period of time. Changes occur constantly which affect zoning. For example, if the "energy crisis" continues, perhaps the public and their elected officials would be more receptive to the construction of a neighborhood shopping center. But the present record shows the public officials acted legitimately after consideration of appropriate factors. Their action was not arbitrary or capricious.

The Court finds that Ordinance No. 68–36 was validly adopted and should not be nullified. Accordingly, judgment is entered for the defendants. It is so ordered.