

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-18-1994

# Acierno v. Cloutier

Precedential or Non-Precedential:

Docket 93-7456

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation
"Acierno v. Cloutier" (1994). *1994 Decisions.* Paper 160.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/160

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 93-7456 & 93-7617


FRANK E. ACIERNO

v.

PHILIP CLOUTIER; RICHARD CECIL; ROBERT POWELL;
ROBERT WOODS; CHRISTOPHER ROBERTS; PENROSE HOLLINS;
KAREN VENEZKY; NEW CASTLE COUNTY; MICHAEL MITCHELL,

Philip Cloutier, Richard Cecil,
Robert Powell, Robert Woods,
Christopher Roberts, Penrose
Hollins and Karen Venezky,
Appellants in No. 93-7456

Michael T. Mitchell,
Appellant in No. 93-7617


Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 92-00385)


Argued March 25, 1994
Before: GREENBERG, COWEN and NYGAARD
Circuit Judges

Submitted in banc August 30, 1994
Before: SLOVITER, Chief Judge, BECKER, STAPLETON,
MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN,
NYGAARD, ALITO, ROTH, LEWIS and McKEE
Circuit Judges

(Opinion Filed: October 18, 1994)


Collins J. Seitz, Jr.
Connolly, Bove, Lodge & Hutz
1220 Market Building
P.O. Box 2207

Wilmington, DE  19899

          COUNSEL FOR APPELLANTS
          PHILIP CLOUTIER, RICHARD CECIL,
          ROBERT POWELL, ROBERT WOODS,
          CHRISTOPHER ROBERTS, PENROSE
          HOLLINS, KAREN VENEZKY AND
          NEW CASTLE COUNTY

Barry M. Willoughby
Young, Conaway, Stargatt & Taylor
P.O. Box 391
Rodney Square North, 11th Floor
Wilmington, DE  19899-0391

          COUNSEL FOR APPELLANT
          MICHAEL T. MITCHELL

Thomas S. Neuberger
Suite 702
200 West Ninth Street
Ninth Street Plaza
Wilmington, DE  19801-1646

John J. Yannacone
Yannacone, Fay, Baldo & Daly
200 East State Street, Suite 107
Media, PA  19063

          COUNSEL FOR APPELLEE
          FRANK E. ACIERNO


OPINION OF THE COURT


COWEN, Circuit Judge.


     In this action under 42 U.S.C. § 1983, the defendants
have appealed the denial of their motions to dismiss on absolute
and qualified immunity grounds.  These appeals were first heard
by a panel of this court, which was bound by Prisco v. United
States Dep't of Justice, 851 F.2d 93 (3d Cir. 1988), cert.

denied, 490 U.S. 1089 (1989).  In that case it was held that a defendant may not appeal the denial of a claim of qualified immunity under the collateral order doctrine if the defendant would nevertheless be required to go to trial on a claim for injunctive relief.  When the panel opinion was circulated to the full court before publication, the court voted to grant rehearing in banc for the purpose of reconsidering Prisco.  Having done so, the full court has decided that Prisco should be overruled.  Part IIB of this opinion, which represents the opinion of the court sitting in banc, addresses that issue.  The issues addressed in the remainder of this opinion have been considered by the panel only.

          In still another chapter in the extensive volume of litigation between Frank Acierno and the members of the New Castle County Council ("County Council") in Delaware concerning Acierno's various development projects, we are called upon to decide whether the members of the County Council are entitled to immunity from suit for their actions of enacting two ordinances which down-zoned Acierno's commercial property.  We conclude that both the present and former members of the County Council are immune from suit because the actions they took with respect to Acierno's commercial property were either substantively and procedurally legislative in nature, or did not abrogate a clearly established property interest.  Accordingly, we will reverse the district court's denial of the motion for summary judgment made by the present and former members of the County Council on immunity grounds.  We will also reverse the district court's

order denying First Assistant County Attorney Mitchell's motion to dismiss on immunity grounds.

I.

A. Factual Background

Plaintiff Frank E. Acierno, a real estate developer, purchased a thirty-eight acre parcel of land located in New Castle County, Delaware (the "property") on October 5, 1984 for slightly more than $1,000,000. As of April, 1971, the property had a classification under New Castle County's zoning ordinance as a "diversified planned unit development" ("DPUD"). A major land development plan for the property was approved by the County and recorded on April 11, 1974. The approved record development plan provided for the construction of a 322 unit apartment complex (to be called "The Maples Apartments"), together with the development of .87 acres of land for commercial use.

It is undisputed that Acierno's interest in owning the property was partly by reason of its DPUD zoning classification and the fact that the property was the subject of an approved record development plan. Before closing on the property, Acierno sought and received assurances from the New Castle County Department of Planning ("Department of Planning") regarding the current zoning and record plan status of the property. In response to Acierno's request, the Department of Planning issued a letter opinion which stated the following: "The land is still currently zoned Diversified Planned Unit Development (DPUD). The status of the record plan is that it is current and, therefore,

the uses permitted are noted on the plan subject to limitations regarding the density, commercial area, etc." Appendix ("App.") (No. 93-7456) at 131. In reliance on these factors, Acierno paid a premium of approximately $900,000 for the property. At the time of purchase, the description of the property specifically noted that the parcel had been approved by County officials for the construction of 322 apartment units.

In October, 1985, Acierno filed with the Department of Planning a revised development plan for the property, which was now to be known as the "Westhampton project." Thereafter, in December, 1985, the County Council issued a resolution pursuant to section 23-81(21) of the County Code[1] requesting that the Department of Planning provide a recommendation as to whether the existing record plan for the property should be voided. The County Council issued this resolution based on concerns that DPUD rezonings were not being developed in a timely fashion, that the density of housing might adversely impact on the general quality of life in the County, that an updated review of traffic, water,

---

[1]. Then County Code § 23-81(21) provided in relevant part as follows:

> If construction has not been completed within . . . five (5) years after the date of approval of the record development plan for the [planned unit development ("PUD")] or the date of approval of the record development plan of the last stage of PUD, if submitted in stages, whichever is longer, then the approval shall be voidable at the discretion of county council, upon recommendation of the department of planning.

New Castle County, Del., Code § 23-81(21) (repealed 1987); App. (No. 93-7456) at 355.

and sewer facilities was necessary, and that the Subdivision Advisory Committee should review the project in light of the character of the existing neighborhood. The record reflects that the project was the only DPUD-zoned property with a record development plan subject to review by the County.

In response to the resolution, the Department of Planning solicited comments from various municipal departments and determined that the property had adequate traffic, water, and sewer capacity. Therefore, the Department of Planning did not make a recommendation that the County Council void the record development plan. Two months later, the then Council Attorney sent a memorandum to the County Council pertaining to the resolution. The memo stated that there was nothing more for the County Council to consider since the voiding provision of the New Castle County Code, § 23-81(21), "indicates that the [Department of Planning] must affirmatively support the voiding of a record plan before Council's discretion comes into being. Without such prerequisite support, Council has no discretion to act. If this were not the case, review by the [Department of Planning] would be meaningless." App. (No. 93-7456) at 140.

On March 11, 1986, then County Council President Karen Peterson informed Acierno that nothing remained for the County Council to consider regarding the resolution and that no further ordinances or resolutions had been proposed concerning the property. Acierno then undertook a revision of the subdivision

plan[2] for the property to address concerns raised by the County regarding the planned use for the site.  The Department of Planning informed Acierno that his revised and updated subdivision plan for the Westhampton project was approved and recorded on April 18, 1986.  A subsequent revised subdivision plan, superseding the April plan, was approved and recorded on December 5, 1986.

During 1987 the County Council revised, updated, and amended the DPUD zoning classification.  At the time a workshop concerning the zoning amendment effort was held in October, 1987, the proposed amended DPUD ordinance contained a "savings clause" which provided as follows:

> Section 4.  This ordinance shall become effective immediately upon its adoption and approval except for rezoning applications currently pending DPUD approval which shall be exempt from the provisions of this ordinance, but subject to the provisions of the Code in effect at the time of rezoning to DPUD.

App. (No. 93-7456) at 92.  This proposed DPUD ordinance, known as "Substitute Ordinance No. 1 to Ordinance 87-025," was not enacted into law.  In response to suggestions made during the workshop, the savings clause was revised to read as follows:

> Section 4.  This ordinance shall become effective immediately upon its adoption and approval except for rezoning applications currently pending DPUD approval which shall be exempt from the provisions of this ordinance except Section 23-81(18), but subject to the provisions in the Code in effect at the time of rezoning to DPUD.

---

[2].  The County Code distinguishes between a "record plan" and major and minor "subdivision plans."  See New Castle County, Del., Code § 20-3 (defining these terms).

App. (No. 93-7456) at 113 (emphasis added).[3]  This revised DPUD ordinance, known as "Substitute Ordinance No. 2 to Ordinance 87-025," was adopted into law by the County Council on October 13, 1987.  Id. at 93, 113.  The language of the savings clause is relevant to this dispute because Acierno alleges that the County Council, through an opinion issued by First Assistant County Attorney Michael T. Mitchell, relied upon the unenacted version to conclude that it had discretion to void Acierno's record development plan.

In 1988, Acierno further revised the Westhampton project subdivision plan and submitted it for County review.  In June, 1988, the Department of Planning informed Acierno that the subdivision plan, superseding the December 5, 1986 subdivision plan, was approved and recorded.  By December, 1988 when a further revised subdivision plan was approved and recorded, Acierno had spent in excess of $1,000,000 to further his development plans for the property, including expenses for mortgage interest, engineering fees, and real estate taxes.  It is not disputed, however, that Acierno never obtained a building

---

[3].  Current County Code § 23-81(18) allows a landowner with DPUD-zoned property 10 years from the date of the original rezoning ordinance to develop the parcel as proposed.  If the property has not been fully developed at the end of the 10 year sunsetting period, the landowner must submit current support facilities information establishing the adequacy of these facilities in the opinion of the Department of Planning in order to continue with the development as approved.  New Castle County, Del., Code § 23-81(18).  This provision replaced former County Code § 23-81(21), which provided a five year window after the date of the approval of the PUD record development plan before the County Council had discretion to void the record plan.  Id. § 23-81(21) (repealed 1987); see supra note 1.

permit from the County allowing him to start construction of the Westhampton project.

The County Council again introduced a resolution in April, 1991 requesting the Department of Planning's recommendation whether to void the existing record development plan for the property. The record reflects that the County Council had concerns similar to those present when a voiding resolution had been introduced in December, 1985. Acting upon this resolution and enclosing a copy of the December, 1988 subdivision plan, the then Director of the Department of Planning contacted the Delaware Department of Transportation for comments concerning road access and traffic impact.

In a memorandum to the County Council dated May 22, 1991, the then Director advised the County Council that Subdivision Advisory Committee members had been asked to comment on the Westhampton project and to identify any issues that might preclude development of the site as depicted by the record development and subdivision plans. The memo stated that various government agencies had identified deficiencies in the subdivision plan, but acknowledged that the situation could be remedied by Acierno through voluntary revisions to the plan. In fact, Acierno responded to the Department of Planning by letter dated May 29, 1991 that he intended to cooperate in order to address and resolve any deficiencies. By June, 1991, Acierno had submitted a wetlands delineation report, thereby fulfilling one of the cited deficiencies.

Defendant-appellant Michael T. Mitchell, First Assistant County Attorney, was also involved in reviewing the voiding resolution proposed in April, 1991. He provided a legal memorandum to the County Council on July 2, 1991 which set forth his opinion as to whether the Council had authority to void Acierno's approved record development plan. Mitchell's opinion concluded that the County Council had discretion to void the record development plan for the Westhampton project upon recommendation by the Department of Planning because the old five-year sunsetting provision of the County Code, repealed § 23-81(21), applied rather than the newly enacted ten-year sunsetting provision, § 23-81(18). In coming to this conclusion, Mitchell relied upon the unenacted savings clause contained in Substitute Ordinance No. 1 to Ordinance 87-025, rather than the enacted savings clause which was introduced as part of Substitute No. 2 to that ordinance.

From May, 1991 through April, 1992 Acierno proceeded with his development efforts by attempting to remedy the purported deficiencies in the Westhampton plan. Some changes in the proposed development were incorporated into a revised plan which was submitted to the Department of Planning for review and approval. The Department of Planning allegedly informed Acierno in September, 1991 that he had complied with all material deficiencies contained in the May 22, 1991 memorandum from the Department of Planning to the County Council. The County Council tabled the resolution to void Acierno's record development plan in September, 1991.

The resolution was reexamined the next Spring. In a letter to the County Council dated April 2, 1992, the Department of Planning indicated that Acierno had submitted a new subdivision plan which resolved the wetlands, fire prevention, and a majority of the public works concerns. The traffic and road access issues were the only remaining deficiencies that had not been completely resolved. The Department of Planning concluded:

> In summary, it would appear that the only remaining issue with respect to our memorandum of May 22, 1991, is access through the Oakwood Hills subdivision. The Department has been given no indication that the applicant will voluntarily remove this access from the plan. Further, we see no evidence that any meaningful dialogue is ongoing between the applicant and community to find a compromise position. Should [the County] Council be of the opinion that this issue warrants voiding of the plan, the Department would recommend that it proceed with action on [the voiding resolution] as this appears to be the only method of bringing closure on this issue.

App. (No. 93-7456) at 39.

After notice and a public hearing, on April 14, 1992 the County Council enacted Ordinance 91-190 voiding the approved record development plan and related subdivision plans for the property. The next day, defendant-appellant Philip Cloutier, then a member of the County Council, informed the Director of Planning that he intended to introduce an ordinance to rezone the property from DPUD back to R-2, its residential zoning classification prior to its rezoning to DPUD in 1971. As required by statute, legal notice of the proposed zoning ordinance was published on June 20, 1992; below the title of the

proposed ordinance contained in the notice was bracketed language indicating that enactment would rezone the property from DPUD to an R-2 zoning classification.

A statutorily required public hearing was held before the Department of Planning and Planning Board on July 7, 1992 concerning the proposed rezoning ordinance. Two weeks later, the Department of Planning recommended the adoption of a substitute ordinance which would rezone the property from DPUD to an R-1-B classification instead of an R-2 classification. The R-1-B zoning classification, which requires an average minimum lot size of 15,000 square feet, is less restrictive than the R-2 zoning classification, which requires an average minimum lot size of 21,780 square feet. Compare New Castle County, Del., Code § 23-39(3) (the R-1-B residence district requires a minimum lot area of 15,000 square feet) with id. § 23-39(6) (the R-2 residence district requires a one-half acre or 21,780 square feet minimum lot area).

On September 9, 1992 the County Council enacted Substitute No. 1 to Ordinance No. 92-119 rezoning the property from DPUD to an R-1-B zoning classification. This action was taken even though all public notices concerning the rezoning had indicated that upon enactment the property would be rezoned from DPUD to an R-2 classification. The effect of the rezoning was that Acierno had to suspend his plans to develop a large apartment building on the property because the R-1-B zoning classification permits only a variety of less intensive uses.

The district court made a finding of fact that Acierno had spent more than $1,000,000 pursuing his plan to develop the property.[4]

## B. Procedural Background

Acierno filed a complaint on July 1, 1992 in the United States District Court for the District of Delaware alleging that the defendants, through the voiding of his approved record development plan and the rezoning of his property, violated his constitutional rights. The original complaint named as defendants the County and present and former members of the County Council.[5] The complaint was subsequently amended in April, 1993 to include First Assistant County Attorney Michael T. Mitchell as a party defendant.

The amended complaint contains two counts. In count one, Acierno seeks compensatory damages and injunctive relief against all defendants pursuant to 42 U.S.C. § 1983. Specifically, Acierno alleges that the defendants violated his equal protection and procedural and substantive due process rights by down-zoning his property. In count two, Acierno seeks

[4]. The district court did not clarify whether this figure of $1,000,000 includes the premium of $900,000 that it found Acierno paid for the property in reliance on the existing DPUD zoning classification and approved record development plan when he purchased the property in 1984. In light of our disposition of these appeals, resolution of this factual ambiguity is not necessary and in no way impacts on our decision in this case.

[5]. The defendants who are presently serving as members of the County Council are Richard Cecil, Robert Woods, Christopher Roberts, Penrose Hollins, and Karen Venezky. The defendants who are former members of the County Council are Philip Cloutier and Robert Powell.

injunctive relief against the County under an equitable estoppel theory.

The present and former County Council members had filed an answer to the original complaint in which they allege defenses of legislative and qualified immunity. These defendants and the County filed a motion for summary judgment on December 4, 1992. After the filing of various motions and responses which are not relevant to this appeal, the district court made a determination to treat the motion by the defendants other than Mitchell as a motion for partial summary judgment. In a Memorandum Opinion and Order dated June 9, 1993, the district court granted the motion for summary judgment on Acierno's procedural due process claim,[6] but denied the motion as to the substantive due process and equal protection claims. See Acierno v. Cloutier, No. 92-385, 1993 WL 215133, at *23-26 (D. Del. June 9, 1993), aff'd in part, rev'd in part, __ F.3d __, 1994 WL 319783 (3d Cir., Jul 07, 1994) (No. 93-7456, 93-7617), vacated and reh'g in banc granted, __ F.3d __, 1994 WL 401516 (3d Cir., Aug 04, 1994) (No. 93-7456, 93-7617). The district court also concluded that the defendants were not entitled to summary judgment with respect to their defenses of legislative and qualified immunity. Id. at *27-30.

---

[6]. Acierno has not cross-appealed the granting of the defendants' motion for summary judgment with respect to the procedural due process claim, and thus, we have no occasion to address this theory of the complaint in this opinion or to consider whether we would have had jurisdiction over a cross-appeal.

The district court separately addressed the defenses of legislative and qualified immunity. The district court articulated a two-part test for entitlement to legislative immunity which requires that the action taken be legislative in nature rather than administrative, and that the action be taken in accordance with statutory procedures. Id. at *27. The court concluded that the enactment of the two ordinances which down-zoned Acierno's property was administrative, rather than legislative, because the two ordinances were directed at a single property owner and not the community at large. Id. The court further held that the members of the County Council were not entitled to legislative immunity because they did not strictly comply with Delaware law when rezoning the property from DPUD to an R-1-B zoning classification. Id. at *27-29.

Turning to the defense of qualified immunity, the district court concluded that because Acierno had a vested right to develop his property pursuant to the DPUD zoning classification and approved record plan, see id. at *9-19, which was clearly established by Delaware state law at the time of the rezoning decisions, no reasonable official would have believed that the rezoning actions were lawful. Id. at *29. In rejecting the qualified immunity defense, the district court also found that a reasonable official would have known that the voiding of the record plan was precluded by County law. Id. Thus, the district court decided that the members of the County Council were not entitled to immunity from suit.

Defendant Mitchell filed a motion to dismiss the amended complaint on the grounds that it fails to state cognizable due process and equal protection claims against him and that he is entitled to qualified immunity from suit. The district court rejected Mitchell's motion to dismiss in a separate Memorandum Opinion and Order dated September 1, 1993. Acierno v. Cloutier, No. 92-385, slip op. at 13-19 (D. Del. Sept. 1, 1993). Addressing the defense of qualified immunity, the district court denied Mitchell's motion because it found that Mitchell had knowingly, or through his own incompetence, relied on unadopted legislation when issuing his legal opinion as to whether the County Council had authority to void the approved record development plan. Id., slip op. at 19-20.

## II.

### A. Jurisdiction of the District Court

Plaintiff Acierno filed this action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights by down-zoning his property. Thus, the district court had subject matter jurisdiction over the federal question claims by virtue of 28 U.S.C. §§ 1331 and 1343. It had supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367. In these appeals, the members of the County Council and defendant Mitchell contend that the district court improperly denied their motions to dismiss or for summary judgment on the grounds of immunity from suit.

## B. Appellate Jurisdiction

Ordinarily we do not have appellate jurisdiction to review district court orders denying motions to dismiss or for summary judgment because there is no final order within the meaning of 28 U.S.C. § 1291. W.D.D., Inc. v. Thornbury Township, 850 F.2d 170, 171 (3d Cir.) (in banc) (per curiam), cert. denied, 488 U.S. 892, 109 S. Ct. 228 (1988). The Supreme Court, however, has held that courts of appeals have appellate jurisdiction under the "collateral order" doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S. Ct. 1221 (1949), to consider whether a defendant is entitled to absolute immunity from suit. Nixon v. Fitzgerald, 457 U.S. 731, 741-43, 102 S. Ct. 2690, 2697-98 (1982); see also Schrob v. Catterson, 967 F.2d 929, 934 (3d Cir. 1992) ("Schrob II"); Schrob v. Catterson, 948 F.2d 1402, 1406-07 (3d Cir. 1991) ("Schrob I"). This principle of appellate jurisdiction has been extended to orders rejecting a defendant's entitlement to qualified immunity from suit to the extent that the decision turns on issues of law. Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S. Ct. 2806, 2814-17 (1985); see also Kulwicki v. Dawson, 969 F.2d 1454, 1459-61 (3d Cir. 1992).

In adhering to this theory of appellate jurisdiction, we have recognized that an order denying a defense of immunity is reviewable before trial because entitlement to "immunity from federal claims encompasses not only immunity from liability, but also immunity from suit." Brown v. Grabowski, 922 F.2d 1097, 1105 (3d Cir. 1990), cert. denied, 501 U.S. 1218, 111 S. Ct. 2827 (1991). See also Federal Ins. Co. v. Richard I. Rubin & Co., 12

F.3d 1270, 1281 (3d Cir. 1993) (sovereign immunity is an immunity from trial), cert. denied, __ U.S. __, 114 S. Ct. 2101 (1994). The Supreme Court has instructed that the first step in reviewing a district court's qualified immunity decision is to determine whether the plaintiff has "allege[d] the violation of a clearly established constitutional right" at all. Siegert v. Gilley, 500 U.S. 226, __, 111 S. Ct. 1789, 1793 (1991); see also D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1368 (3d Cir. 1992) (in banc), cert. denied, __ U.S. __, 113 S. Ct. 1045 (1993). This threshold inquiry requires us to determine whether the constitutional right asserted by Acierno was "`clearly established' at the time the defendants acted," and whether Acierno "has asserted a violation of a constitutional right at all." Siegert, 500 U.S. at 232, 111 S. Ct. at 1793.[7]

_____

[7]. The Supreme Court's majority opinion in Siegert, when read as a whole, seems to suggest that where practicable or expedient an appellate court should first address whether the plaintiff has alleged a cognizable constitutional claim at all, before turning to the question of whether the constitutional right asserted was "clearly established" at the time the defendant acted. 500 U.S. at 232-33, 111 S. Ct. at 1793-94. In fact, we have emphasized this aspect of the Siegert decision in a subsequent case where we decided to address all plaintiffs' allegations of constitutional error as a predicate question to whether the constitutional rights were "clearly established" at the time the defendant acted. See D.R. by L.R., 972 F.2d at 1368. Nevertheless, concurring in the judgment in Siegert, Justice Kennedy recognized that in certain cases, like the one before the Supreme Court in that case, it is an "altogether normal procedure" for the court of appeals to decide the case "on the ground that appear[s] to offer the most direct and appropriate resolution," 500 U.S. at 235, 111 S. Ct. at 1795 (Kennedy, J, concurring in the judgment), which in difficult constitutional cases will sometimes be whether the constitutional right was "clearly established" at the time the defendant acted. Furthermore, the majority opinion in Siegert does not state that courts of appeals must always as an initial inquiry address whether a constitutional violation has

The present case involves two appeals: (1) the defendants who are current and former members of the County Council have appealed the district court's order denying their motion for summary judgment insofar as the court rejected their defenses of legislative and qualified immunity from suit; and (2) defendant Mitchell has appealed the district court order denying his motion to dismiss insofar as the court rejected his defense of qualified immunity from suit. Although all parties agree that we have jurisdiction under the collateral order doctrine to consider the issues of legislative and qualified immunity, they disagree on the scope of our appellate jurisdiction.

The Nixon case makes clear that we have appellate jurisdiction to consider whether the former members of the County Council are entitled to absolute legislative immunity. 457 U.S. at 741–43, 102 S. Ct. at 2697–98; see also Schrob I, 948 F.2d at

(..continued)
been alleged by the plaintiff. In fact, in cases decided after both Siegert and D.R. by L.R., we have opted to address whether the constitutional right asserted was "clearly established" at the time the defendant acted, without initially deciding whether a constitutional violation was alleged at all. See Rappa v. New Castle County, 18 F.3d 1043, 1077–79 (3d Cir. 1994); Abdul–Akbar v. Watson, 4 F.3d 195, 201–05 (3d Cir. 1993).

In cases such as the present one, where the court would be required to undertake a detailed analysis of unreported and undeveloped state and county law issues in order to determine whether a cognizable constitutional claim was alleged at all, we believe a more prudent course is to first address whether the constitutional right asserted by the plaintiff was "clearly established" at the time the defendant acted. We will follow such a course in this case because, as will be explained infra, the state and county law issues which we would need to decide in order to determine whether Acierno possessed a vested right to develop his commercial property before the rezoning ordinances were passed are particularly difficult and undeveloped.

1406-07; Venen v. Sweet, 758 F.2d 117, 121-22 (3d Cir. 1985); Forsyth v. Kleindienst, 599 F.2d 1203, 1207-09 (3d Cir. 1979), cert. denied, 453 U.S. 913, 101 S. Ct. 3147 (1981).  The scope of our jurisdiction to consider the issues of qualified immunity, and legislative immunity as concerns the present members of the County Council, is a more complex question, however, especially in light of the fact that Acierno seeks prospective injunctive relief against several of the defendants.  When deciding the appealability of qualified immunity issues in Mitchell, a case in which only monetary damages were sought, the Supreme Court expressly left open the question whether a case involving claims for injunctive relief would change the equation.  472 U.S. at 519 n.5, 105 S. Ct. at 2812 n.5.  We subsequently addressed that question and held that the denial of a defendant's claim to entitlement to qualified immunity is not immediately appealable when the plaintiff has requested injunctive relief.  Prisco v. United States Dep't of Justice, 851 F.2d 93, 95-96 (3d Cir. 1988), cert. denied, 490 U.S. 1089, 109 S. Ct. 2428 (1989).

As a result, plaintiff Acierno submits that we must dismiss these appeals insofar as they involve present County Council members Cecil, Woods, Roberts, Hollins, and Venezky, and First Assistant County Attorney Mitchell, because he seeks prospective injunctive relief against these parties.  With respect to former County Council members Cloutier and Powell, against whom it is impossible to obtain prospective injunctive relief, Acierno concedes that the order denying their motion for

summary judgment on legislative and qualified immunity grounds is immediately appealable.

The present members of the County Council argue that Prisco was wrongly decided. They bring to our attention the prevailing rule among all of our sister courts of appeals that, despite the existence of a request for injunctive relief, pre-trial orders denying a defendant's entitlement to qualified immunity are immediately appealable. See Burns v. County of Cambria, Pa., 971 F.2d 1015, 1019-20 (3d Cir. 1992)(canvassing cases from the nine circuits which disagree with Prisco), cert. denied, __ U.S. __, 113 S. Ct. 1049 (1993). Defendants who are present members of the County Council insist that Prisco should be overruled because it undermines the policy rationale behind appeals where immunity was pled and, additionally, because of the ease with which the Prisco rule can be invoked to circumvent a defendant's right to an immediate appeal. On the other hand, Acierno asserts that the long-standing policy of preventing piece-meal appeals still warrants adherence to the Prisco rule and that a careful review by the appellate courts of the request for injunctive relief would prevent any abuse of the rule by plaintiffs.

Since a panel does not have the occasion to reconsider a prior panel opinion and is bound to follow our precedent, it is only now, sitting in banc, that we may reexamine the rationale of Prisco. See Internal Operating Procedures, United States Court of Appeals for the Third Circuit, Rule 9.1 (prior reported opinions can be overruled only by the court sitting in banc). In

light of recent opinions which call into question the continued vitality of Prisco, we now consider whether the Prisco rule should meet its demise.  At stake in these proceedings is whether we should now hear the appeals of the present County Council members or, alternatively, dismiss their appeals for lack of an appealable order as they involve issues of whether these members (against whom injunctive relief is sought) are entitled to absolute or qualified immunity.

In Prisco, we recognized that a suit seeking both prospective relief and money damages does not end for a party successfully asserting a defense of either absolute or qualified immunity.[8]  Prisco, 851 F.2d at 96.  We observed that the policy

[8].  Specifically, we held, "that in an action in which claims for prospective relief remain pending, a party against whom they remain pending may not appeal from the denial of a motion for summary judgment on immunity grounds."  Prisco, 851 F.2d at 96 (footnote omitted).  Although the Prisco case did not explicitly involve an issue of absolute immunity, its holding extends to absolute as well as qualified immunity.  Defendants argue that we were incorrect in asserting such a broad proposition of law in light of Supreme Court of Virginia v. Consumers Union of United States, Inc., 446 U.S. 719, 731–34, 100 S. Ct. 1967, 1974–75 (1980).  Defendants read Consumers Union as standing for the proposition that legislative immunity confers an immunity from suit for both injunctive relief as well as damages.  See also Spallone v. United States, 493 U.S. 265, 278, 110 S. Ct. 625, 633 (1990) (indicating that it had been previously decided in Consumers Union that legislative immunity extends to actions for both damages and injunctive relief).  We note that the Supreme Court has never held that legislative immunity applies to both claims for damages and injunctive relief.  A close reading of Consumers Union indicates that the Supreme Court merely pointed to an obvious circuit split which existed at the time and, we believe, remains unresolved today.   There are at least two courts of appeals that have suggested that the Supreme Court has definitively spoken on this issue and has held that absolute immunity is a bar to injunctive relief.  See Risser v. Thompson, 930 F.2d 549, 551 (7th Cir.), cert. denied, 112 S. Ct. 180 (1991); Alia v. Michigan Supreme Court, 906 F.2d 1100, 1102 (6th

rationale for granting qualified immunity is that, "we do not want officials to make discretionary decisions with one wary eye on their pocketbook." Prisco, 851 F.2d at 95. We then concluded that such a rationale does not apply to suits for injunctive relief. Id. In our discussion, we balanced the marginal benefit to a government official from an interlocutory appeal on the issue of damages against the systemic harms of permitting piece-meal interlocutory review of discrete issues in a case which will be ongoing. Prisco, 851 F.2d at 96. We must now reassess our prior analysis and determine whether the balance that existed at the time of Prisco is still valid today.

In Siegert v. Gilley, the Supreme Court reaffirmed the principle that "[o]ne of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." Siegert, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793 (1991). We note that Prisco tends to minimize this strong public policy reason which favors jurisdiction over interlocutory immunity appeals.

(..continued)
Cir. 1990). However, a substantial number of courts of appeals, including the Third Circuit, believe the issue is unresolved by the Supreme Court, and have held that absolute immunity is a bar to damages only, and not to prospective or injunctive relief. See Schrob II, 967 F.2d at 939 (3d Cir. 1992); Fry v. Melaragno, 939 F.2d 832, 839 (9th Cir. 1991); Chrissy F. v. Mississippi Dep't of Public Welfare, 925 F.2d 844, 849 (5th Cir. 1991), cert. denied, 114 S. Ct. 1336 (1994); Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1539 (11th Cir.), cert. denied, 112 S. Ct. 55 (1991); Schloss v. Bouse, 876 F.2d 287, 292 (2nd Cir. 1989).

In Schrob II, this Court reviewed authority from other courts of appeals that struck the balance in favor of recognizing appellate jurisdiction even where injunctive relief claims are present. The Schrob II panel noted that other courts of appeals have "criticized Prisco for qualitatively equating the burdens associated with defending against a suit for money damages with the burdens associated with defending a suit for injunctive relief." Schrob II, 967 F.2d at 940. See also Burns, 971 F.2d at 1020 (expressing "dissatisfaction with the Prisco rule"). As other courts have observed, even though injunctive relief claims may continue after appeal, "considerable differences [exist] in both time and expense in defending a case that involves both damages and equitable relief as contrasted to a case that involves equitable relief alone." Young v. Lynch, 846 F.2d 960, 962 (4th Cir. 1988). See also DiMartini v. Ferrin, 889 F.2d 922, 925 (9th Cir. 1989), amended, 906 F.2d 465 (9th Cir. 1990), cert. denied, 501 U.S. 1204, 111 S. Ct. 2796 (1991).

As the Court of Appeals for the Seventh Circuit explained in Scott v. Lacy, 811 F.2d 1153, 1153-54 (7th Cir. 1987), "a public official who is a defendant in a suit [for injunctive relief] is not `on trial' at all. The suit seeks relief against him in his official capacity; he need not attend the trial, which will be conducted by attorneys representing the governmental body." Indeed, a suit against elected officials in their official capacity is functionally a suit against the government entity.

The procedure dictated by Prisco undermines the reasons for recognizing qualified immunity -- to permit a public servant to concentrate on official duties without the distraction and worries which are the inevitable consequence of disruptive litigation. While a defendant who loses a claim for injunctive relief is simply ordered to refrain from taking certain action in his or her official capacity, an official who is denied qualified immunity must be concerned with personal liability without the right of appeal, to which he or she would otherwise have been entitled. See Kennedy v. City of Cleveland, 797 F.2d 297, 306 (6th Cir. 1986)("The exposure to personal liability in damages and the potential need for retention of private counsel to protect against that risk is quite different from the problem faced by an official who is charged only in an official capacity.").

The instant case highlights the inconsistency of the Prisco decision with the public policy furthered by interlocutory review of immunity determinations. The former County Council members, who no longer have official duties that would be subject to disruption by the litigation, would be spared further involvement, while the present Council members would be forced to go forward with their official duties still burdened by the distraction and worries of the litigation. This is directly contrary to the policy behind the immunity doctrine of protecting the present elected officials from suit and possible personal liability when making discretionary decisions. Additionally, as noted in Schrob II, a plaintiff "can easily circumvent a

defendant's right to immediate appeal simply by adding a claim for equitable relief."  Schrob II, 967 F.2d at 940.

We believe that a balancing approach similar to the one we used to decide Prisco still has merit today.  However, after carefully re-examining the policy and practical considerations of such a rule, we conclude that Prisco failed to give adequate weight to the benefits derived by public officials of being freed from the unpleasantries and demands on their time due to continued litigation.  Prisco also weighs too heavily the harms associated with interlocutory appeals.  We therefore overrule Prisco.

In addition to arguing that Prisco was wrongly decided, Mitchell also seeks to distinguish Prisco by arguing that Acierno has made no viable claim for injunctive relief against him. Assuming arguendo that a claim for injunctive relief was made against Mitchell, we nonetheless have appellate jurisdiction to consider whether Mitchell was entitled to dismissal on qualified immunity grounds in light of the above discussion which overrules Prisco.

In sum, we have appellate jurisdiction to consider whether the present and former members of the County Council are entitled to absolute legislative and qualified immunity from suit.  We also have appellate jurisdiction to consider whether the district court erred in denying First Assistant County Attorney Mitchell's motion to dismiss on qualified immunity

grounds.[9]  In our consideration of the qualified immunity issue as it relates to the substantive due process claim, we will first determine whether plaintiff Acierno has asserted a violation of a clearly established constitutional right at all.

III.

In this case we must decide whether the district court correctly denied the members of the County Council's motion for summary judgment on legislative and qualified immunity grounds, and First Assistant County Attorney Mitchell's motion to dismiss on qualified immunity grounds.  Because "[t]his appeal presents a purely legal question concerning the scope of the immunity doctrine," we exercise plenary review over the district court's denial of the summary judgment motion on legislative immunity grounds.  Donivan v. Dallastown Borough, 835 F.2d 486, 487 (3d Cir. 1987), cert. denied, 485 U.S. 1035, 108 S. Ct. 1596 (1988).

_____

[9].  With these appeals, the defendants argue that the district court erred as a matter of law in failing to grant their motion for summary judgment as to Acierno's claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment.  It is not clear from the district court's opinion that the defendants argued that they are entitled to absolute legislative immunity or qualified immunity with respect to this allegation. Furthermore, in their brief submitted to this court the defendants did not argue that their immunity defenses also relieve them of liability on the equal protection claim. Accordingly, because our jurisdiction is limited to addressing the defenses of legislative and qualified immunity for the members of the County Council and Mitchell, we do not express any opinion concerning whether Acierno possesses a viable claim for a violation of the Equal Protection Clause or whether there are immunity defenses for any of the defendants to such a claim.

We also exercise plenary review over the denial of the summary judgment motion and motion to dismiss on qualified immunity grounds because this issue presents a "purely legal" question. Burns, 971 F.2d at 1020; Lee v. Mihalich, 847 F.2d 66, 67 (3d Cir. 1988). To the extent that the district court interpreted state and county law in determining whether Acierno had a vested right to develop the property, the district court is not entitled to any deference. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S. Ct. 1217, 1221 (1991); cf. Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1557 (3d Cir. 1994). Thus, the determinations regarding state and county law necessary to decide whether the defendants are entitled to qualified immunity will be reviewed de novo. Salve Regina College, 499 U.S. at 231, 111 S. Ct. at 1221.

IV.

A.

We first address the issue of whether the members of the County Council are entitled to absolute legislative immunity for their actions because in the event we agree with their position, such a ruling would obviate the need for evaluating their claim to entitlement to qualified immunity. The Supreme Court has held that individual members of state legislatures are absolutely immune from suit for damages under 42 U.S.C. § 1983 when conducting legitimate legislative activity. Tenney v. Brandhove, 341 U.S. 367, 376-79, 71 S. Ct. 783, 788-89 (1951). After the Supreme Court extended this protection of absolute

immunity to regional legislators functioning in a capacity comparable to that of members of a state legislature, <u>Lake Country Estates, Inc. v. Tahoe Regional Planning Agency</u>, 440 U.S. 391, 402-06, 99 S. Ct. 1171, 1178-79 (1979), we further extended it to protect members of local legislative bodies for actions taken in a purely legislative capacity. <u>Aitchison v. Raffiani</u>, 708 F.2d 96, 98-99 (3d Cir. 1983); <u>see also</u> <u>Ryan v. Burlington County, N.J.</u>, 889 F.2d 1286, 1290 (3d Cir. 1989).[10]

The County Council, whose members are elected, is a local governmental body that has been given a combination of legislative and administrative powers. <u>See</u> Del. Code Ann. tit. 9, §§ 1146, 4901 (1989). "It is only with respect to the legislative powers delegated to them by the state legislatures that the members of local governing boards are entitled to absolute immunity." <u>Ryan</u>, 889 F.2d at 1290. Thus, our task in making this immunity determination requires us to examine whether the members of the County Council were acting in an administrative or legislative capacity when they enacted the ordinances down-zoning Acierno's property. <u>Abraham v. Pekarski</u>,

---

[10]. In <u>Bass v. Attardi</u>, 868 F.2d 45, 49-50 (3d Cir. 1989), we held that members of a municipal planning board, acting pursuant to their governmental function as defined by state statute when making land use decisions, were absolutely immune in their individual capacities from a damage suit brought under 42 U.S.C. § 1983. Acierno does not allege that the members of the County Council were acting in a non-governmental function, e.g., outside of powers delegated to them by state law, when they enacted the two ordinances which down-zoned his property. Therefore, for purposes of deciding this case, we will assume without deciding that the members of the County Council were acting within their statutorily defined governmental function when the two ordinances were enacted.

728 F.2d 167, 174 (3d Cir.), cert. denied, 467 U.S. 1242, 104 S. Ct. 3513 (1984).

We have established a two-part test to determine whether actions are to be regarded as legislative for immunity purposes: (1) the action must be "substantively" legislative, which requires that it involve a policy-making or line-drawing decision; and (2) the action must be "procedurally" legislative, which requires that it be undertaken through established legislative procedures. Ryan, 889 F.2d at 1290-91. In order to provide a further inquiry to help define the first part of the Ryan test, we stated that decisions affecting a single individual or a small number of people do not implicate legislative power and, thus, such actions are administrative in nature. Id. at 1291. Furthermore, in prior cases we have indicated that such an inquiry is an appropriate factor to consider when determining whether an action is legislative or administrative, see Donivan, 835 F.2d at 488; Rogin v. Bensalem Township, 616 F.2d 680, 693-94 (3d Cir. 1980), cert. denied, 450 U.S. 1029, 101 S. Ct. 1737 (1981), but we have not held this inquiry to be conclusive.

When the district court conducted its analysis under the first part of the Ryan test, it focused only on the factor of whether the action was directed toward a single individual or the community at large. The district court stated, "legislative acts are those which apply generally to the entire community, whereas acts specifically directed at one or a few individuals are executive or administrative acts." Acierno v. Cloutier, No. 92-

385, 1993 WL 215133, at *27 (D. Del. June 9, 1993).[11] Based on the fact that passage of the two ordinances did not rezone any other landowner's property, the district court held that the County Council's actions with respect to Acierno's property were administrative in nature. Id.

We believe the district court erred in its application of the "substantive prong" of the Ryan test by placing too much emphasis on the factor of whether the action was directed at a single individual or the community at large. It is difficult to find fault with the district court, however, because we concede that the prior decisions of this court are somewhat unclear as to what are the relevant factors, and how much weight each should be given, in deciding whether zoning and other land use actions are substantively legislative or administrative in nature. Furthermore, there is a consistent thread running through the case law which indicates that courts often point to the narrow target of an action as indicative of an administrative, rather than legislative, act. See, e.g., Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir. 1984)(planning board's decision "to insist on completion of a particular road before granting approval of a specific proposed subdivision" was an action based on specific

---

[11]. The district court cited the following cases for this proposition: Donivan, 835 F.2d at 488; Rogin, 616 F.2d at 693; Ryan v. Burlington County, N.J., 708 F. Supp. 623, 640 (D.N.J.), aff'd, 889 F.2d 1286 (3d Cir. 1989); and de Botton v. Marple Township, 689 F. Supp. 477, 482-83 (E.D. Pa. 1988). As we already stated, in Donivan and Rogin we did rely in part on this factor, but we did not hold that this inquiry is dispositive of the administrative/legislative determination.

rather than legislative facts tending to single out specific individuals and affect them differently than others; thus, the action was administrative rather than legislative in nature); Scott v. Greenville County, 716 F.2d 1409, 1422-23 (4th Cir. 1983)(county council members who reviewed a specific building permit application assumed a non-legislative role); Jodeco, Inc. v. Hann, 674 F. Supp. 488, 495 (D.N.J. 1987)("Official acts affecting the community at-large might tip the balance in favor of a finding of legislative conduct, while acts directed at one or a few individuals might be dispositive of executive or administrative conduct.").

In Jodeco, the district court commented that there was no definitive standard in this circuit for distinguishing between legislative and non-legislative actions. 674 F. Supp. at 494-95. Although in Ryan we clarified the test somewhat by indicating that actions must be both substantively and procedurally legislative in nature in order to be entitled to absolute immunity, we believe that the "substantive prong" of the standard requires further elaboration. To fill the gap which has been left open in our prior cases dealing with legislative immunity, we repeat the standard employed by the district court in Jodeco:

> [In order to distinguish] legislative from non-legislative functions, . . . the appropriate inquiry [is] whether the conduct of the defendant zoning officials involved either the enactment or amendment of zoning legislation or simply the enforcement of already existing zoning laws. Acts performed pursuant to the former are legislative in character and the officials performing them are entitled to absolute immunity, while acts performed pursuant to the latter are administrative, executive, or ministerial and the officials performing them may only receive the

protection of qualified immunity. Factored into this equation should be the impact that such official conduct has on the citizens of the municipality. Official acts affecting the community at-large might tip the balance in favor of a finding of legislative conduct, while acts directed at one or a few individuals might be dispositive of executive or administrative conduct.

674 F. Supp. at 494-95. We have previously cited with approval the court's analysis in Jodeco concluding that members of planning boards in New Jersey are entitled to absolute immunity because their responsibilities "are so integrally related to the judicial process . . . ." Id. at 496. See Bass v. Attardi, 868 F.2d 45, 50 (3d Cir. 1989). Likewise, we now adopt the court's analysis of the legislative/administrative determination as our own.

In the present case, the members of the County Council acted to down-zone Acierno's property through two separate, albeit related, actions. The first action was the enactment of an ordinance on April 14, 1992 voiding the approved record development plan and related subdivision plans for the property. The second action was the enactment of an ordinance on September 9, 1992 rezoning the property from DPUD to an R-1-B zoning classification. Accordingly, we must consider each of these actions under the standard articulated above.

The enactment of the ordinance voiding the approved record development plan was undertaken by the County Council pursuant to the authority of the sunsetting provision of the County Code, § 23-81(18), which allows the Council to revoke development rights after the passage of ten years to ensure that

facilities and infrastructure are sufficient. This ordinance was passed in an effort to facilitate enforcement of existing zoning laws, not to facilitate enactment or amendment of new zoning laws involving broad-based policy or line-drawing determinations. Furthermore, the ordinance affected only one piece of property, and thus was aimed at only one landowner, Frank Acierno. We thus conclude that the County Council's enactment of Ordinance 91-190 on April 14, 1992, which voided the approved record development plan and related subdivision plans for the property, was an administrative, not legislative, action. The members of the County Council are not entitled to legislative immunity with respect to this action.[12]

We now turn to the County Council's second action, the enactment of Substitute 1 to Ordinance 92-119 which rezoned the property from DPUD to an R-1-B zoning classification. This action of rezoning the property was undertaken pursuant to the legislative powers delegated to the County Council under Delaware state law. See Del. Code Ann. tit. 9, §§ 2601-2614 (1989 & Supp. 1992). Furthermore, the rezoning of the property was accomplished through the ordinance procedure, which we have found necessary in order for the action to be substantively legislative in character. Donivan, 835 F.2d at 488-89. If not for the fact

---

[12]. The parties disagree as to whether the entire rezoning process, which involved the enactment of the two ordinances, was accomplished consistently with all the procedures required by state law. In light of our conclusion that the enactment of Ordinance 91-190 was not substantively legislative in character, we need not address whether this action also violated the "procedural prong" of the Ryan test.

that the ordinance was aimed at one parcel of property and one landowner, the action would appear to be substantively legislative, not administrative, in nature.

Nevertheless, this case requires us to address the difficult question of whether a rezoning action that is otherwise substantively legislative in character is removed from the scope of actions protected by the absolute immunity doctrine merely because it was directed at one parcel of property. In Ryan, we did state that "[w]here the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration." 889 F.2d at 1291. However, we did not intend this consideration as a bright-line rule which automatically overrides other important indications that an action is substantively legislative in character. Rather, we intended this consideration as a factor that is usually important but may not be dispositive of the administrative/legislative outcome. This reading of Ryan is confirmed by the manner in which the Ryan court applied its test. While noting that the decision at issue "did not affect the community as a whole," the court went on to state that "[t]his is a strong indication that legislative line-drawing was not implicated." Id. Therefore, the Ryan court itself did not apply the factor that the decision was directed at a single individual or a small group as a dispositive consideration which trumps other relevant factors.

Although we have indicated that the factor of an action being directed at one property or one landowner is an important

consideration, other courts have concluded that the rezoning of a single parcel of land to a less intensive use through the enactment of an ordinance is legislative activity. See Fralin & Waldron, Inc. v. County of Henrico, Va., 474 F. Supp. 1315, 1320–21 (E.D. Va. 1979)(members of planning board were engaged in legislation when acting to rezone a single parcel of property); Shellburne, Inc. v. New Castle County, 293 F. Supp. 237, 244 (D. Del. 1968)("the members of the County Council were acting within the scope of legitimate legislative activity when they voted to rezone plaintiff's property"). Delaware state law is to the same effect. See Shellburne, Inc. v. Buck, 240 A.2d 757, 758 (Del. 1968). Furthermore, the cases in which the factor of the zoning ordinance being directed at only a single or few property owners has been dispositive of the administrative/legislative determination generally have been variance or special exception decisions, not rezoning decisions. See, e.g., Rogin, 616 F.2d at 693 n.60 (denial of use variance); Cutting, 724 F.2d at 261 (subdivision approval); Scott, 716 F.2d at 1422–23 (denial of building permit); Jodeco, 674 F. Supp. at 496 (denial of variance applications).

Finally, we also believe that the members of a county legislature who enact a rezoning ordinance affecting only one property or landowner may still be acting in a policy-making or line-drawing manner. In the present case, the subject property consisted of thirty-eight acres of unimproved land with an approved development plan calling for 322 apartment units and some commercial use. Through the normal review process, specific

concerns arose such as whether the development plan complied with wetlands regulations, the fire prevention code, and public works regulations, and that the project as planned may pose serious traffic and road access problems. In response to these concerns and, ultimately, Acierno's failure to address all of them adequately in a timely fashion, the County Council acted to regulate the intensity of development on this fairly large parcel of land by passing the rezoning ordinance.

Under these circumstances, a blind adherence to the principle that legislation affecting a single property or owner is administrative rather than legislative would eviscerate the overarching aim of protecting local legislators from suit under the absolute immunity doctrine when they make broad policy decisions to further the communities in which they serve. Therefore, we hold that the members of the County Council in enacting Substitute 1 to Ordinance 92-119, which rezoned the property from DPUD to an R-1-B zoning classification, were acting in a substantively legislative manner. Nevertheless, as we made clear in Ryan, the members of the County Council are not entitled to absolute legislative immunity for this action unless it was also procedurally legislative. 889 F.2d at 1290-91.

The enactment of Substitute 1 to Ordinance 92-119 was procedurally legislative if it was undertaken through established legislative procedures. Id. That is, the members of the County Council are entitled to absolute immunity for this action if they followed "the statutory procedures specified for such action." Abraham, 728 F.2d at 174. Addressing the "procedural prong" of

the Ryan test, the district court held that the members of the County Council failed to comply with specified statutory procedures in rezoning the property from DPUD to an R-1-B zoning classification. Acierno v. Cloutier, No. 92-385, 1993 WL 215133, at *27 (D. Del. June 9, 1993). Specifically, the district court found that the County Council violated title 9, section 1152(b) of the Delaware Code by enacting an ordinance which had been "amended as to [a] matter of substance which [was] not embraced within the title of the ordinance" without subjecting the ordinance "to all of the procedures . . . required in the case of a newly introduced ordinance." Id. at *28 (quoting Del. Code Ann. tit. 9, § 1152(b)).

Acierno took issue with the procedure employed to rezone his property because the County Council ultimately adopted an ordinance rezoning the property to an R-1-B classification, while bracketed language below the title of the originally proposed ordinance, for which the County Council had complied with all requisite procedures, stated that the ordinance would rezone the property to an R-2 classification. In the district court, the members of the County Council argued that this change did not affect the title of the ordinance and, in any event, was not a material amendment because the R-1-B zoning classification is less restrictive than the R-2 zoning classification. The district court rejected these arguments because the very purpose of the ordinance was to change the zoning classification, and because the actual language which was changed was part of the

title of the ordinance and was not for informational purposes only.

On appeal, the members of the County Council argue that the district court's "technical objection" to the allegedly deficient notice does not prevent members of municipal legislative bodies from establishing legislative immunity. We reject the notion that our decision in Abraham stands for the broad proposition that a mere technical violation of the statutory procedures specified for legislative action, by itself, converts an otherwise legislative action into an administrative action. Rather, in Abraham, we looked to the failure to follow procedures established by state law, which were required to be followed in order to legislate, as indicative that a township board had invoked its managerial powers in dismissing an employee. 728 F.2d at 174-75. Thus, we viewed the compliance with statutory procedures as a prerequisite for finding an action legislative in character, but we did not hold that a mere technical violation of a statutory procedure would have the effect of converting an otherwise legislative action into an administrative action to which absolute immunity does not apply.

Addressing the "procedural prong" of the immunity determination, in Ryan we stated that "[t]his principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve." 889 F.2d at 1291. In the present case, it is undisputed that the members of

the County Council followed all the statutory procedures required in order to enact an ordinance: (1) a legal notice of the proposed zoning ordinance was published; (2) a public hearing was held before the Department of Planning and Planning Board; and (3) the adopted ordinance, though amended during the Planning Board hearing, was enacted by vote at a public meeting of the County Council. Even though the version of the ordinance ultimately enacted, Substitute 1 to Ordinance 92-119, was not formally put through all the statutory procedures after the amendment was agreed upon at the public hearing held before the Department of Planning and Planning Board, we believe that the members of the County Council engaged in legislative activity and took the steps necessary to rezone the property in compliance with Delaware law.

We also believe there to be an important distinction between general adherence to legislative procedure for the purposes of taking legislative action as a matter of federal law, as opposed to full compliance with all technical requirements for such legislative action to be valid under state or county law. It may well be that if in fact state law required the substitute to the originally proposed ordinance to also go through all the statutorily required notice procedures and hearings, then Acierno would be able to successfully attack the validity of Substitute 1 to Ordinance 92-119 in an administrative or state court proceeding. But the fact that Acierno may have an alternative remedy based on an alleged failure of the legislative body to follow state-mandated procedures does not mean that, as a matter

of federal law, the resulting action is transformed from one that is procedurally legislative into one that is not.

Therefore, we hold that in making the determination of whether a particular action was procedurally legislative or not, the court need only be satisfied that the municipal body is acting pursuant to the basic legislative procedure. In the present case, we find no indication in the record that the members of the County Council bypassed state-mandated procedures in bad faith when enacting Substitute 1 to Ordinance 92-119. Rather, the record reflects that the County Council followed the ordinance procedure, published notice of its intended action, and held the appropriate public hearings before enacting the rezoning ordinance. Consequently, we hold that the district court erred in holding that a possible violation of the publication notice requirement destroyed the legislative character of the County Council's act of enacting Substitute 1 to Ordinance 92-119.[13]

---

[13]. The members of the County Council also argue that their action of rezoning the property did not violate the "procedural prong" of the Ryan test (1) because that portion of the ordinance which indicated the precise zone the property would be changed to was not part of the title of the ordinance, and thus was not a material alteration; (2) because Acierno does not have standing to complain since he attended and participated in the public hearings; (3) because he was not prejudiced since the R-1-B zoning classification allows for more intensive development than the R-2 zoning classification; and (4) because the remedy that the district court's ruling would require -- a return to the Planning Board for review and subsequent republication -- would be unnecessarily duplicative since it made the recommendation that the proposed ordinance be amended in the first place. In light of our conclusion that the enactment of Substitute 1 to Ordinance 92-119 was procedurally legislative, we need not address these contentions.

In sum, we conclude that the members of the County Council are entitled to absolute legislative immunity for rezoning Acierno's property through the enactment of Substitute 1 to Ordinance 92-119 because that action was substantively and procedurally legislative in character. Nevertheless, the members of the County Council are not entitled to legislative immunity for the enactment of Ordinance 91-190, which voided the approved record development plan and related subdivision plans for the property, because that action was administrative in nature, not legislative. We will reverse in part, and affirm in part, that part of the district court's order denying the defendants' motion for summary judgment on legislative immunity grounds. Therefore, we must address whether the members of the County Council are entitled to protection under the more limited doctrine of qualified immunity for their action voiding the approved record development plan for the property.

B.

Addressing the defendants' claim of entitlement to qualified immunity from suit requires us to determine whether Acierno possessed a "clearly established" constitutional right to develop his property which was abrogated by the County Council through the action of voiding his record development plan and subdivision plan. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). In his amended complaint, Acierno alleges that he had a vested right to develop the property pursuant to the DPUD zoning classification and the approved

record development plan.  The district court agreed with Acierno and found that his vested right to develop the property arose from independent Delaware state and County law sources.  However, our review of County law and Delaware state law reveals that if Acierno did possess a vested right to develop his property as zoned, that right was not so "clearly established" as to strip the members of the County Council and First Assistant County Attorney Mitchell from an entitlement to qualified immunity. Thus, we will reverse the district court's denial of the defendants' motion for summary judgment on qualified immunity grounds for the members of the County Council, and its denial of Mitchell's motion to dismiss on qualified immunity grounds.

When considering whether members of local legislative bodies are entitled to immunity from suit, we have recognized that there is a compelling need for such a protective doctrine because of the severe chilling effect numerous suits for damages would have on prospective officials.  See Jodeco, Inc. v. Hann, 674 F. Supp. 488, 493 (D.N.J. 1987)(cited with approval in Bass v. Attardi, 868 F.2d 45, 49-50 (3d Cir. 1989)).  We also believe that adherence to the immunity doctrine is necessary in order to allow elected and appointed officials to make intelligent land use decisions without the constant fear of litigation infecting the decision-making process.  Bass, 868 F.2d at 50 n.11 (quoting Anastasio v. Planning Bd., 209 N.J. Super. 499, 526, 507 A.2d 1194, 1208, certification denied, 107 N.J. 46, 526 A.2d 136 (1986)).  Recognizing similar concerns, the Supreme Court has indicated that the qualified immunity defense has evolved to

provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986); see also Schrob I, 948 F.2d 1402, 1421 (3d Cir. 1991).

In Harlow v. Fitzgerald, the Supreme Court announced that the test for determining whether government officials are entitled to qualified immunity for their actions involves an objective, rather than subjective, inquiry. 457 U.S. at 815–18, 102 S. Ct. at 2736–38. The Supreme Court stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S. Ct. at 2738; see also Burns v. County of Cambria, Pa., 971 F.2d 1015, 1021 (3d Cir. 1992), cert. denied, __ U.S. __, 113 S. Ct. 1049 (1993).

Subsequently, the Supreme Court has clarified that the first inquiry in considering a claim to entitlement to qualified immunity is to examine whether the plaintiff has "allege[d] the violation of a clearly established constitutional right." Siegert v. Gilley, 500 U.S. 226, 231, 111 S. Ct. 1789, 1793 (1991); see supra note 7. In a recent discussion of the "clearly established" right aspect of the qualified immunity determination, we stated:

> The right an official is alleged to have violated must have been "clearly established" in a "particularized" sense. Anderson v. Creighton, 483 U.S. [635,] 640, 107 S. Ct. [3034,] 3039 [(1987)]. That is, "[t]he contours of the right must be sufficiently clear that a

> reasonable official would understand that what he is
> doing violates that right." Id. Thus, qualified
> immunity does not apply if "reasonable officials in the
> defendants' position at the relevant time could have
> believed, in light of what was in the decided case law,
> that their conduct would be unlawful." Good v. Dauphin
> County Social Servs. for Children and Youth, 891 F.2d
> 1087, 1092 (3d Cir. 1989).

Abdul-Akbar v. Watson, 4 F.3d 195, 202 (3d Cir. 1993).

When complaining of a violation of substantive due

process rights, a plaintiff must prove that the governmental

authority acted to "infringe[] a property interest encompassed by

the Fourteenth Amendment." Midnight Sessions, Ltd. v. City of

Philadelphia, 945 F.2d 667, 679 (3d Cir. 1991), cert. denied, __

U.S. __, 112 S. Ct. 1668 (1992). As the Supreme Court has

previously stated:
> Property interests, of course, are not created by the
> Constitution. Rather they are created and their
> dimensions are defined by existing rules or
> understandings that stem from an independent source
> such as state law--rules or understandings that secure
> certain benefits and that support claims of entitlement
> to those benefits.

Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709

(1972).

Thus, as the district court did in this case, when

analyzing substantive due process claims courts are required to

turn to state and local law to determine whether the plaintiff

possessed a property interest which was abrogated by the

governmental action. The question of whether the property

interest requirement has been met is generally a matter of law

for the court to decide. RRI Realty Corp. v. Incorporated

Village of Southampton, 870 F.2d 911, 918 (2d Cir.), cert. denied, 493 U.S. 893, 110 S. Ct. 240 (1989).

In denying the defendants their claim to entitlement to qualified immunity, the district court first found that Acierno had a protected property interest. The court concluded that Acierno had a protected property interest in both the approved record development plan and the DPUD zoning classification, and that this property interest was independently derived from both New Castle County and Delaware state law sources. Since the district court addressed Acierno's property interest as arising from these independent sources, we will follow suit in our discussion.

The district court first determined that Acierno had a vested right pursuant to County law. For purposes of this analysis, the court assumed that the County Council had relied upon the repealed "five-year sunset provision" of the County Code, § 23-81(21)(repealed 1987), as the authority for its power to void the record development plan. Assuming that provision was properly applied, the district court concluded that it gave Acierno "a legitimate claim of entitlement to the continuing validity of the record plan and the zoning classification to which it related, and to develop the [p]roperty consistent therewith." Acierno v. Cloutier, No. 92-385, 1993 WL 215133, at *10 (D. Del. June 9, 1993). The district court reached this conclusion on the grounds that as a factual matter the record plan which was voided in April, 1992 was the subdivision plan approved and recorded in December, 1988, and that the County

Council had no discretion whatsoever to act until, at the earliest, the expiration of the five-year sunset period.

First, the district court indicated that by reason of a legal memorandum issued in 1986, the County Council knew that its discretion to void a record plan did not even come into existence until the Planning Department made such a recommendation. The district court concluded that Acierno had a property interest arising from a legitimate claim of absolute entitlement to develop the property consistent with the approved record plan and DPUD zoning classification during the five-year sunset period beginning from the date the plan was approved in December, 1988. In addition, the court concluded that he had a property interest arising from a legitimate claim of entitlement to develop the property without interference from the County after the expiration of the five-year sunset period but before the Planning Department made a formal recommendation to void the record plan. Finally, the court determined that if the repealed five-year sunset provision did not apply, but rather the ten-year sunset provision contained in current County Code § 23-81(18) was applicable, Acierno had a property interest arising from a legitimate claim of entitlement to develop the property without interference from the County because the current ten-year sunset provision contains no language providing the County with authority to void record development plans.

The defendants argue that the district court's analysis is flawed because a landowner does not obtain a vested right to develop property before acquiring a building permit and

commencing construction through some ground-breaking activity. Furthermore, they contend that the district court failed to appreciate the important distinction between Acierno's record development plan, originally recorded in 1974, and the subsequently filed subdivision plans which were submitted and recorded in 1986 and 1988. The defendants argue that the five-year sunset provision governs, and that if the five-year sunset provision had been applied from the date the PUD record development plan was approved in 1974, the district court would have concluded that Acierno had no vested right to develop his property based on County law because the County properly exercised its discretion to void the record development plan well after the five-year sunset period expired in 1979.

The district court also found that Acierno had acquired a property interest under the applicable Delaware state law doctrines of vested rights and equitable estoppel. The defendants argued in the district court that Delaware follows the majority rule of state courts and requires a developer to obtain a building permit and to commence some ground breaking activity before a vested right to develop attaches. This rule of vested rights, which is known as the "permit plus rule," was recognized by the Delaware Supreme Court:

> It is generally recognized that the issuance of a building permit does not, alone, confer any right against a later zoning change. Otherwise stated, a permit is not per se protected against a zoning change subsequently adopted. The acquisition of vested rights requires more. As of the time of the zoning change, there must have been a substantial change of position, expenditures, or incurrence of obligations, made lawfully and in good faith under the permit, before the

> land owner becomes entitled to complete the
> construction and to use the premises for a purpose
> prohibited by a subsequent zoning change.  This is the
> rule supported by a great majority of the cases.

Shellburne, Inc. v. Roberts, 224 A.2d 250, 254 (Del. 1966).

Apparently seizing on the Delaware Supreme Court's inclusion of the word "alone," the district court read this passage as indicating that the vested rights rule in Delaware does not preclude property owners from acquiring a vested right to develop as long as there has been a substantial change of position or expenditure, even though they have not obtained a building permit.  In support of this interpretation of the Delaware rule, the district court turned to several cases in which the Delaware courts had subsequently applied the vested rights and equitable estoppel doctrines "to a broad range of circumstances."  Acierno v. Cloutier, No. 92-385, 1993 WL 215133, at *12 (D. Del. June 9, 1993).

In particular, the district court focused on two unreported cases from the lower state courts which it read as refuting the defendants' contention that under Delaware law a landowner has no vested right to continue development after an adverse zoning change unless prior to the change he had obtained a building permit and materially changed his position in reliance thereon.  See Wilmington Materials, Inc. v. Town of Middleton, Civ. A. No. 10392, 1988 WL 135507, at *6-9 (Del. Ch. Dec. 16, 1988)(relying on the equitable estoppel and vested rights doctrines, the court enjoined town from enforcing a zoning amendment to prevent the development of a property even though no

permit had been issued); New Castle County v. Mitchell, Civ. A. No. 6231, 1981 WL 15144, at *3-7 (Del. Ch. Nov. 25, 1981)(because property owner had begun renovations to make his property suitable for an adult entertainment center and had applied for a building permit before the planned location was rezoned to a classification in which such uses were not allowed, the court determined that the property owner had acquired a vested right and that the principle of equitable estoppel entitled the plaintiff to continue his business at that location).

The district court then discussed an unpublished criminal decision in order to refute the defendants' claim that the above unpublished cases are inconsistent with Shellburne and other relevant Delaware Supreme Court precedent. See State v. Raley, Cr. A. No. S90-07-0002, 1991 WL 18114 (Del. Super. Ct. Feb. 8, 1991), aff'd without opinion, 604 A.2d 418 (Del. 1991).[14]

The defendants argue on appeal that the common law rule of vested rights set forth in Shellburne, the "permit plus" rule, is the law of Delaware and a majority of other states. While a minority of jurisdictions confer a vested right at the time application for a building permit is made, a majority of states have adopted the view that a developer must possess a building permit and make a substantial change in position or expenditures,

_____

[14]. In Raley, the state charged the defendant with violating certain Delaware Marina Facility Regulations enacted after he received an administrative permit. Citing Wilmington Materials and Mitchell, the court concluded that the vested rights doctrine in Delaware did not give the defendant a constitutional right to develop the marine facility as planned under the prior regulations.

or incur substantial obligations in reliance thereon, in order for rights to vest. 4 Arden H. Rathkopf et al., Rathkopf's The Law of Zoning and Planning § 50.03, at 50-12, 50-25 (4th ed. 1975). Moreover, in some states specific statutes, regulations, or zoning ordinances themselves confer rights upon developers already engaged in developing their property to remain exempt from zoning code or regulations changes for a period of time and to acquire vested rights by subsequent action. Id. § 50.02, at 50-5 to -9.

The defendants further contend that the "permit plus" rule adopted by the Delaware Supreme Court in Shellburne has been reaffirmed by that court and several lower state courts. See Mayor of New Castle v. Rollins Outdoor Advertising, Inc., 475 A.2d 355, 360 (Del. 1984)(in banc)(In Shellburne "we held that a property owner has no vested right in a zoning classification, and that a building permit does not, per se, confer any right against a later zoning change. But we ruled that under certain circumstances, such as where an owner had made a substantial change of position or a substantial expenditure, a vested right arises from good faith reliance upon a building permit."); Miller v. Board of Adjustment, 521 A.2d 642, 647 (Del. Super. Ct. 1986) (vested right requires a permit plus a change of position); Willdel Realty, Inc. v. New Castle County, 270 A.2d 174, 178 (Del. Ch. 1970), aff'd, 281 A.2d 612 (Del. 1971); Barrows v. City of Lewes, Civ. A. No. 83C-MR 32, slip op. at 3 (Del. Super. Ct. Mar. 27, 1985)("The issuance of a building permit is the first prerequisite of such a [vested rights] claim based on financial

detriment.  A fortiori, when a building permit is not issued, indeed, when an application for such a permit is not made, plaintiff has no right, vested or otherwise, to construct anything on his property.").  The defendants argue that the district court was obliged to follow the majority vested rights rule of "permit plus" as articulated by the highest court in Delaware and not as stated in unreported lower court decisions which are to the contrary.  See Colantuno v. Aetna Ins. Co., 980 F.2d 908, 909 (3d Cir. 1992)("[W]hen federal courts are required to interpret or apply state law, we consider and accept the decisions of the state's highest court as the ultimate authority of state law.").

The defendants characterize the district court's holding as improperly recognizing that once a property owner has record development and subdivision plans approved, the municipality is estopped from enacting any zoning changes which would abrogate the developer's vested rights even in the absence of any construction activity or other detrimental reliance. According to the defendants, recognition of such a vested rights doctrine is contrary to Delaware law and other reported land use decisions.  See L.M. Everhart Constr., Inc. v. Jefferson County Planning Comm'n, 2 F.3d 48, 52 (4th Cir. 1993).  In L.M. Everhart Construction, the plaintiff argued that Planning Commission approval of a subdivision plat created an absolute vested right to develop the parcel as approved.  Rejecting this argument, the court stated that it was "tantamount to an assertion that, once approved, a subdivision plat is exempt from all future zoning and

subdivision regulations.  We can find no court that has adopted such a broad conception of vested rights."  Id.[15]

Finally, the defendants also attack the district court's reliance on the doctrine of equitable estoppel for its finding that Acierno had a vested right to develop his property as zoned.  They contend that an equitable estoppel claim cannot form the basis for a legitimate claim of entitlement so as to support the existence of a property right as required in a § 1983 substantive due process action.  In Biser v. Town of Bel Air, 991 F.2d 100 (4th Cir.), cert. denied, __ U.S. __, 114 S. Ct. 182 (1993), the Court of Appeals for the Fourth Circuit addressed whether a state court order of equity estopping a municipality from denying a special exception from a zoning ordinance represented a legal claim of entitlement.  The Biser court rejected the plaintiff's argument that a state court order based on equitable estoppel could create a state-law property interest:

> In order to justify substantive due process protection, the legal right to a permit must exist before the local agency denies the permit application -- the claim of entitlement must come from "an existing legislative or administrative standard."  Dean Tarry Corp. v. Friedlander, 826 F.2d 210, 213 (2d Cir. 1987)(emphasis added).  Equitable estoppel does not recognize a pre-

_____

[15]. The defendants also argue that the district court's interpretation of the doctrine of vested rights would obviate the need for a statutory provision enacted by New Castle County which addresses the rights of developers at the subdivision approval stage.  Under County Code § 23-6, the approval of a subdivision plan protects the planned development against subsequent zoning changes for a period of three years.  New Castle County, Del., Code § 23-6.  The ordinance voiding Acierno's record development plan was enacted in April, 1992, more than three years after the most recent subdivision plan for the property was approved and filed in December, 1988.

existing legal right; rather, estoppel bars a defendant from asserting a legal right that it would otherwise be entitled to enforce, based on that party's conduct.

991 F.2d at 104.

What the above discussion concerning the district court's decision and the defendants' arguments on appeal demonstrates to us is that the vested rights law of both New Castle County and the State of Delaware at the time the County Council enacted Ordinance 91-190 was subject to considerable uncertainty and differing interpretations. While we decline to take a position as to whether the district court's prediction of what the Delaware Supreme Court would hold concerning vested rights, the "permit plus" rule, and equitable estoppel is correct as a matter of law, we do not believe that Acierno's property interest was "clearly established" under New Castle County and Delaware law at the time Ordinance 91-190 was enacted in 1992. Therefore, even if we were to conclude that the Delaware courts would agree substantially with the district court's analysis of vested rights, Acierno's property interest, if any existed, was not so "clearly established" as to strip the members of the County Council and Mitchell of their qualified immunity defenses.

In Anderson v. Creighton, the Supreme Court articulated the "clearly established" standard:

The contours of the [constitutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987)(citations

omitted).  We further clarified that this qualified immunity

question involves two governing inquiries:

> First, in order for the governing law to be
> sufficiently well established for immunity to be
> denied, it is not necessary that there have been a
> previous precedent directly in point . . . .  The
> ultimate issue is whether, despite the absence of a
> case applying established principles to the same facts,
> reasonable officials in the defendants' position at the
> relevant time could have believed, in light of what was
> in the decided case law, that their conduct would be
> lawful.  Second, even where the officials clearly
> should have been aware of the governing legal
> principles, they are nevertheless entitled to immunity
> if based on the information available to them they
> could have believed their conduct would be consistent
> with those principles.

Good v. Dauphin County Social Servs. for Children and Youth, 891

F.2d 1087, 1092 (3d Cir. 1989).[16]

Applying this test in the present case, we need go no

further than the first inquiry because we believe that reasonable

county officials in Delaware charged with legislating and

enforcing the New Castle County zoning scheme in 1992 could have

believed that their action of voiding Acierno's record

development plan was lawful.  We come to this conclusion for

several reasons.

First, we agree with the defendants that the highest

court in Delaware has provided no clearer discussion of the

---

[16].  Thus, the doctrine of qualified immunity protects the
actions of municipal officials except when they act in a "plainly
incompetent" manner or when they "knowingly violate the law."
Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096
(1986); see also Abdul-Akbar v. Watson, 4 F.3d 195, 205 (3d Cir.
1993); Schrob v. Catterson, 948 F.2d 1402, 1421 (3d Cir. 1991).

vested rights doctrine since Shellburne, Inc. v. Roberts, and that case adopts the restrictive, majority rule that vested rights do not attach without a "permit plus."[17]  The Delaware Supreme Court has subsequently reaffirmed the "permit plus" rule.  See Rollins Outdoor Advertising, 475 A.2d at 360.  Furthermore, published decisions of lower state courts in Delaware are to the same effect.  E.g., Miller, 521 A.2d at 647; Shellburne, Inc. v. Conner, 315 A.2d 620, 622 (Del. Ch. 1974), aff'd, 336 A.2d 568 (Del. 1975).  Thus, Mitchell and the members of the County Council could have reasonably believed that they were lawfully acting to void Acierno's record development plan because he did not have a vested right to develop without first obtaining a building permit.

Second, the district court's analysis ultimately rests on a belief that the law of vested rights in Delaware has evolved beyond the "permit plus" rule and now involves a focus on whether the property owner suffered sufficient substantial reliance to have development rights vest.  Even though the district court's conclusion was wholly derived from unpublished decisions, we believe that if the Delaware law has truly developed in this manner, the discretionary aspect of the determination of whether rights have vested supports our conclusion that reasonable zoning

----

[17].  Moreover, the case apparently downplays the possibility that vested rights can attach solely through detrimental reliance, absent obtaining a building permit: "The plaintiff concedes that a property owner has no vested right in a zoning classification. This rule is not changed by financial detriment."  Shellburne, Inc., 224 A.2d at 254 (emphasis added).

officials could have believed that enactment of the voiding ordinance was a lawful action. We also note that in the very case the district court relied upon to conclude the Delaware law had developed in this manner, State v. Raley, Cr. A. No. S90-07-0002, 1991 WL 18114 (Del. Super. Ct. Feb. 8, 1991), the property owner had already obtained a permit, which significantly undermines the court's reliance on this case as a source of authority for its reading of the law.

Third, the complex nature of the body of law which underlies the vested rights doctrine leads us to conclude that, in certain circumstances, even municipal officials who act in an unlawful manner may have reasonably believed they were acting lawfully. Commentators have recognized that the subject of vested rights

> is one of the most troublesome areas of land use regulation . . . . Its solution has required the reconciliation of the doctrine of separation of powers with the constitutional requirements of substantive due process, a balancing of interests of the public as a whole and those of the individual property owners, and, in many cases, the element of good faith and bad faith and the resort to equity and equitable principles.

4 Rathkopf, supra, § 50.01, at 50-2. When making land use decisions which involve the rezoning of a developer's property, local officials must analyze this complex body of law in order to ascertain whether a particular action will clearly abrogate a vested right the developer has acquired. The doctrine of qualified immunity is designed to protect reasonable officials in the exercise of their duties, which in the case of local legislators and administrators charged with making land use and

zoning decisions often involves interpreting complicated issues of state and county law.

Therefore, we hold that under the vested rights doctrine as recognized in Delaware, Acierno's property interest, if any in fact existed, was not so clearly established as to defeat the members of the County Council and Mitchell of their claims to qualified immunity for their actions leading to the enactment of Ordinance 91-190.  In addition, we also conclude that the law of equitable estoppel cannot provide the basis for a property interest which supports a substantive due process claim under § 1983 in federal court.  Any claim of entitlement must derive from an existing legislative or administrative standard. Biser, 991 F.2d at 104.  Although Acierno might be able to proceed directly against the County under a theory of equitable estoppel in order to attack the validity of the rezoning process, it does not support his damage claim brought pursuant to § 1983 in federal court.  Finally, without undertaking a complete analysis of whether Acierno might prevail in attacking the validity of Ordinance 91-190 because the County Council may have relied on an unadopted ordinance as the source for its authority, County law cannot provide the basis for vitiating the defendants' entitlement to qualified immunity because the issue was not settled under County law at the time they acted.[18]

---

[18].  With respect to this issue we note that we have found no reported state or federal cases which construe the DPUD ordinance provisions at issue in this case.  We also note that the district court did not conclude that the five-year sunset provision was not applicable; it merely concluded that the County Council relied on an unadopted ordinance in voiding Acierno's record

V.

In sum, with respect to the members of the County Council, the order of the district court denying their motion for summary judgment on legislative immunity and qualified immunity grounds will be reversed. The members of the County Council are entitled to legislative immunity for their action rezoning Acierno's property by enacting Substitute No. 1 to Ordinance 92-119. They are entitled to qualified immunity for voiding Acierno's record development and subdivision plans by enacting Ordinance 91-190. Finally, the order of the district court denying First Assistant County Attorney Mitchell's motion to dismiss on qualified immunity grounds also will be reversed.

(..continued)
development plan. Our review of this issue leads us to conclude that even if the County Council did rely on an unadopted ordinance, reliance on the appropriate ordinance would have resulted in the same result--application of the five-year sunset provision which allows a record plan to be voided upon the recommendation of the Department of Planning. We reject any indication in the district court's opinion supporting the principle that the unknowing reliance on unadopted legislation as authority for an action should result in a per se denial of the qualified immunity defense.